## CITY OF ST. LOUIS v. POLINSKY, Appellant.

### In Banc, October 20, 1905.

**MILK: Coloring Matter: Annatto: Deception: Injury to Health: Validity of Ordinance.** The adding of a coloring matter, such as annatto, to milk from poorly fed cows, or to milk from healthy cows at certain seasons of the year, in order to give it the rich and golden color belonging to the milk of cows fed on green food, whether such adulterant increases or lessens the wholesomeness of the milk, is a deception and a fraud upon the milk-consuming public; and an ordinance which prohibits the sale of such milk is a reasonable police regulation.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*E. F. Stone* for appellant.

Ordinace 20808 is unconstitutional and void in that it violates sec. 4, art. 2, and sec. 30 of art. 2 of the Constitution of this State, and deprives defendant of his natural right to life, liberty and the enjoyment of the gains of his own industry, and of his property and liberty without due process of law. And it is void also as being in violation of sec. 1 of the fourteenth amendment to the Constitution of the United States, which provides

that no one shall be deprived of life, liberty or property without due process of law, nor denied the equal protection of the laws. The ordinance operates to absolutely suppress and prohibit the sale of milk conceded to be wholesome and healthy, and an article of food in general use, and declares its sale or offering for sale a crime. Fixing such a standard as the one in the ordinance provided amounts to an arbitrary declaration that milk that is "wholesome and innocuous" is unhealthy. The ordinance makes the "exchange, or having in possession, with intent to sell, exchange or deliver skimmed milk in any other manner than set forth in the ordinance," though healthy and wholesome, a crime, with virtually no opportunity to defend. This is shocking. Judge Dillon fully and forcibly expresses just this situation when he refers to the decision in the Powell case, 127 U. S. 678, as follows: "We cannot but express our regret that the Constitution of any of the States or of the United States admits of a construction that it is competent for a State Legislature to suppress (instead of regulating) under fine and imprisonment, the business of manufacturing and selling a harmless and even wholesome article, if the Legislature chooses to affirm, contrary to the fact, that the public health or public policy requires such suppression. The record of the conviction of Powell for selling, without any deception, a healthful and nutritious article of food makes one's blood tingle." Such an ordinance violates said constitutional provisions and is a nullity.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

(1) The addition of annatto, or similar substances which are harmless to health when added to milk, cream, butter or oleomargarine, is an adulteration, under laws similar to the one here in question. Water-

bury v. Newton, 50 N. J. L. 534; Plumley v. Massachusetts, 155 U. S. 476; Com. v. Weatherbee, 153 Mass. 159; State v. Bockstruck, 136 Mo. 335; People v. Arensberg, 105 N. Y. 132; People v. Girard, 145 N. Y. 105. (2) It is a matter of common knowledge that the quality of milk depends largely, or is at least supposed by the public to depend largely, on the nature of the food that the cows are fed upon; that cows fed on grass, clover or other fresh green food give a quality of milk superior in richness and appearance to cows fed on refuse, slops or winter foods; by the addition of annatto coloring matter to the chalky white cream from winter-fed or poorly fed cows, the deception is practiced upon the public of making the latter poorer quality of milk, or at least less desirable quality, to assume the rich and golden appearance of the former which the public prefer, and thus palm off something which is, or is at least supposed by the buyer to be, of an inferior quality, and therefore less salable, in place of what the buyer thinks he is getting. Such a fraud and deception upon the public, and unfair advantage over an honest competitor, may clearly be prohibited by the sale of such fraudulent article. It is not the honest sale of the article, but its dishonest sale as something which in reality it is not, that is prohibited. It is to prevent the opportunity of deception, one which "renders it easy to deceive purchasers into buying that which they would not buy but for the deception." State v. Addington, 77 Mo. 110, approved in 155 U. S. l. c. 477; State v. Layton, 160 Mo. 492; People v. Arensberg, 105 N. Y. 133; Weigand v. Dist. of Columbia, 22 D. C. App. Cas. 559; Plumley v. Massachusetts, 155 U. S. 475; Dairy Co. v. Ohio, 183 U. S. 246; Powell v. Pennsylvania, 127 U. S. 678; State v. Schlenker, 112 Iowa 642; State v. Campbell, 64 N. H. 405.

GANTT, J.—This appeal involves the validity and constitutionality of section 17 of ordinance No. 20808.

In the case of St. Louis v. Liessing, reported at page 464 of this volume, nearly all the objections raised on this appeal were considered and decided adversely to defendant's contention. As to those, reference need only be made to that case, and we will address ourselves only to those features peculiar to the section assailed by this appeal.

The information in this case charges that on the 20th day of March, 1903, and on divers other days and times prior thereto, the defendant Polinsky, doing business under the name of the "Penmar Dairy Co." did then and there in the city of St. Louis, carry, control and expose for sale at 3024 Locust street, in said city, cream, which said cream did contain an adulterant known as annatto, contrary to the ordinance in such case made and provided. The said section 17 is as follows:

"Section 17. Any person, firm or corporation who shall sell, expose for sale, exchange, deliver, dispose of or transport, convey or carry, or with any such intent as aforesaid have in his or her care, custody, control or possession, any milk or cream having therein, or containing any foreign substances of any kind whatever, or coloring matter, or any adulteration or preservatives, whether for the purpose of artificially increasing the quality of the milk or cream or for preserving the condition or sweetness thereof, or for any purpose whatever, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars for each and every offense."

Patrick Comer testified that as deputy milk inspector, he did on March 20th, 1903, take a sample of cream from the wagon of the defendant, and put it in an eight-inch bottle, sealed it and turned it over to the city chemist.

Walter Bernays, city chemist, testified that he made an analysis of said sample of cream and it was found to contain coloring matter, annatto, an artificial

coloring matter, and that it was an adulterant. That there was no method of determining the amount of annatto present. It is put in to color the cream; to enrich the color and make it appear to the consumer that it contains more fat than it really does. He stated that annatto was not injurious to health so far as he knew.

William Grafeman, for the defense, testified in substance that he had been in the milk business in St. Louis since 1883 and was president of the Grafeman Dairy Company. That milk in certain seasons of the year is white because cattle do not get green food, as green corn, grass, etc. Annatto is used to meet public demands. The public do not like white cream. Annatto gives it a richer color and the public demand it as they do in butter. In other words, the public requires to be fooled. They buy milk on its looks. It is their belief that when it is yellow, it is richer and better and for this reason the coloring matter is put in. At the conclusion of the evidence a demurrer to the evidence was offered and overruled, and then two instructions, one that the ordinance was unconstitutional, and the other that it was invalid because unreasonable as a matter of law and on the evidence, were prayed by the defendant and overruled.

I. All that was said on the principal objection to this ordinance as a whole, in St. Louis v. Liessing, is applicable to the facts of this case and need not be repeated. It remains only to determine that provision of section 17 of the ordinance which prohibits the sale or offering for sale of any milk or cream having therein any foreign substance or coloring matter.

It is too plain for doubt that annatto is put in cream and milk for the purpose of deceiving purchasers and consumers thereof, and making them believe they are buying a better article than they are in fact obtaining. The defense to this case is that it is a harmless decep-

tion and that the color of milk or cream indicates only the food upon which a cow is fed, as if the food upon which a cow is fed makes no difference in the quality of milk or cream she will give. The question then is whether it is competent for the Legislature or Municipal Assembly to prohibit the use of artificial colorings, such as annatto, calculated to deceive, and whether under the ordinance challenged annatto is an adulterant within the meaning of the ordinance.

On this point there seems to be much unanimity in the deliverances of the courts of last resort. In State v. Addington, 77 Mo. 110, the contention of the defendant was that the act of March 24, 1881, which prevented the manufacture and sale of oleaginous substances or compounds of the same, *in imitation* of *pure dairy* products, was unconstitutional, and he offered to prove that oleomargarine was wholesome as an article of food, and if he could establish that fact the constitutionality of the act would be overthrown, but this court rejected the argument as subversive of the exercise of the police power, this court saying that if the contention of the defendant could be sustained, then any man arrested for killing game at an unlawful season might appropriately offer to prove that the birds killed were injurious to the public or destructive to crops, or the master of a vessel required to submit to sanitary regulations might prove that there was no disease on his vessel and therefore a law compelling him to remain at quarantine was an infringement of his constitutional rights. The act in the oleomargarine case was sustained on the ground that it was the manifest purpose of the act to prevent facilities for selling or manufacturing spurious articles of butter, resembling the genuine article so closely in its external appearance as to render it easy to deceive purchasers into buying that which they would not buy but for the deception. The decision of this court in that case

was sustained by the Supreme Court of the United States in Plumley v. Massachusetts, 155 U. S. 477.

In State v. Bockstruck, 136 Mo. 356, an act prohibiting the coloring yellow of any substance designed to be used as a substitute for butter and cream was sustained on the ground that its evident object and dominating idea was to prevent the manufacture or sale of a spurious article of butter.

In Powell v. Com., 114 Pa. St. 265, a statute much resembling that in Addington's case was held valid, though the article was marked and sold as "oleomargarine butter" and was shown to be a wholesome and nutritious article of food, and that judgment was affirmed by the Supreme Court of the United States in Powell v. Pennsylvania, 127 U. S. 678. In Massachusetts a statute was held constitutional which prohibited the sale of milk though adulterated with an admixture of *pure* water only. [Com. v. Waite, 11 Allen 264.]

In People v. Arensberg, 105 N. Y. 123, an act to prevent *deception in the sale* of dairy products, was held not violative of the Constitution, the language of the act being, "in *imitation or semblance or designed to take the place of natural butter*," the ground of the opinion being that it was designed to prevent *deception*.

These cases were followed in State v. Layton, 160 Mo. 474.

In Waterbury v. Newton, 50 N. J. L. 534, an act prohibiting the addition of annatto to oleomargarine was upheld, though it appeared that oleomargarine colored with annatto was a wholesome article of food. Among other things, the court said that the object of the act was to exclude from the market a commodity prepared *with a view to deceive* those purchasing it, and that the power of the Legislature to repress counterfeits could not admit of question. This ruling was sustained in Plumley v. Massachusetts, 155 U. S. 461.

In Com. v. Schaffner, 146 Mass. 512, a statute for-

bidding the sale of milk to which any foreign substance has been added came before the court for construction. It appeared that annatto had been added to color milk and it was held a violation of the act, the court saying, "It was immaterial whether the addition of the annatto coloring matter was or was not injurious to health." To like effect see also, Com. v. Wetherbee, 153 Mass. 159; Beha v. State (Neb.), 93 N. W. 155; People v. Girard, 145 N. Y. 105.

In this last case, involving the right to sell vinegar containing any artificial coloring matter, the court said: "There is talk here of interferences with the vested rights of an individual. Sometimes it is pertinent and weighty, but in this case it is neither. It becomes the assertion of a vested right to color a food product so as to conceal or disguise its true and natural appearance; in plain words, a vested right to deceive the public."

It is within the common knowledge that the quality of milk depends largely upon the nature of the food that cows are fed upon; that cows fed upon grass, clover or other fresh green food, give a quality of milk superior in richness and appearance to that drawn from cows fed on refuse, slops, or winter foods. By adding annatto to the white milk or cream given by winter fed or poorly fed cows, a deception is practiced upon the milk-consuming public by making this milk of inferior quality assume the rich and golden appearance of superior milk. Such conduct is a fraud and deception upon the public and an unfair advantage over honest competitors who refuse to resort to such deception against which the ordinance is levelled, and we hold it was clearly within the charter power of the city referred to in St. Louis v. Liessing. [Weigand v. Dist. of Columbia, 22 App. Cas. (D. C.) 559, 571; Plumley v. Massachusetts, 155 U. S. 461, 475, and cases cited; Capital City Dairy Co. v. Ohio, 183 U. S. 238; State v. Schlenker, 112 Iowa 642; State v. Campbell, 64 N. H. 402.]

The judgment of the St. Louis Criminal Court of Correction is affirmed.

*Brace, C. J., Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.