# STATE OF MISSOURI, Respondent, v. C. W. EARL, Appellant.

### Kansas City Court of Appeals, January 2, 1911.

1. **FOOD PRODUCT: Artificial Coloring: Statute.** A section of a statute enacting that no vinegar should be artificially colored or flavored, followed in the same chapter by another section inflicting a punishment.for a' violation of such section, is a prohibition on such coloring or flavoring and one violating it is properly convicted.

2. **————: Police Power: Labels and Brands.** · A statute absolutely prohibiting the coloring or flavoring of vinegar is a valid exercise of the police power of the Legislature. And the fact that the vinegar is colored may be branded or labeled on its receptacle, will not relieve one who sells it from the penalty of the statute.

3. **————: ————: Harmless: Liability to Deceive: Fraud.** The fact that coloring matter ·put into articles of food is harmless, does not prevent the Legislature from forbidding it, if the acts are of such character as to make it difficult to determine whether they are committed for an innocent or a harmful purpose.

4. **————: ————: Taste: Prejudice: Authority to Prohibit: Quaere.** Many articles of wholesome and nutritious food are at first obnoxious and require cultivation of taste to become palatable; and the authority of the Legislature to absolutely prohibit the manufacture and sale of such articles on the ground that a present prejudice exists against them so as to render them objectionable, is questioned.

5. **————: ————: ————: Right to Color: Attractiveness.** In the absence of a probability of deception and fraud upon the public, a manufacturer or merchant may render his merchandise more beautiful or attractive by harmless artificial coloring.

Appeal from.Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

AFFIRMED.

*G. W. Duvall* and *C. C. Madison* for appellant.

*Elliott W. Major,* Attorney-General and *James T. Blair,* Assistant Attorney-General, for respondent.

ELLISON, J.—Defendant was convicted on an information by the prosecuting attorney of Jackson county, for selling one pint of vinegar artifically colored with caramel, in violation of the statutes. The appeal was taken to the Supreme Court as involving a construction of the Constitution, but that court transferred it to this court.

The particular statute to be construed is section 4842, Revised Statutes 1909, which reads as follows: "All vinegar sold or offered for sale, exchange or delivery shall be without artificial coloring or flavoring; and no person, by himself or his agent or employee, shall sell or offer for sale, exchange, deliver, or knowingly have in his custody or possession with intent to sell or exchange, or expose or offer for sale or exchange, any vinegar labeled or branded as cider vinegar, or as apple vinegar, which is not the legitimate product of pure apple juice, or that is not made exclusively from apple cider."

The section which declares the acts thus prohibited to be a misdemeanor and punishable as such, is 4844, and as its reading is depended upon in part by defendant, we set it out: "No vinegar shall be branded 'fruit vinegar' unless the same be made wholly from apples, grapes or other fruits; and any person who shall knowingly brand, label or sell or offer for sale as such "fruit vinegar" any vinegar not made wholly from apples, grapes or other fruits, or who shall violate any one of the three foregoing sections, shall be deemed guilty of a misdemeanor, and be punished as provided in section 4841."

At the trial it was agreed in writing that defendant did "sell and offer for sale, exchange and deliver

one pint of vinegar artifically colored with caromel; that said caramel coloring is harmless and was used for coloring purposes only and that said bottle containing said pint of vinegar was labeled 'colored distilled vinegar,' and that said vinegar was in fact 'colored distilled vinegar.' "

Defendant insists that the object of this statute, connected with other sections, discloses that the Legislature intended only to prevent fraudulent practices in mislabeling as fruit vinegar an article manufactured from other substances and ingredients. We think the statute has that purpose, but it clearly has a further intention. A false brand is not the only mode of deception in articles of food. A false color, or a false flavor, is equally, or probably more, liable to deceive than a false brand; and we are not inclined to restrict language to an unnatural meaning in order to make exempt a character of fraud which the Legislature evidently had in view. The statute, as above set out, expressly declares that all vinegar sold shall be without artificial color or flavor. And it then provides, not only a punishment for false brands of vinegar as fruit vinegar, but also a punishment for a violation of any other part of the section; which is no less than saying that the punishment shall be inflicted upon him who sells vinegar with artificial coloring or flavoring.

It is insisted that the prosecution, justified by the construction we have stated, is beyond the police power of the state, since it restricts one's right to conduct a business in which he does not deceive or commit a fraud. This contention is based upon the admission by the state that the coloring was harmless, and also the fact that the public was advised that the vinegar was colored, by a label upon the bottle.

The question is important. It was considered in construing so extreme a statute as absolutely prohibited the manufacture and sale of oleomargarine. [State v. Addington, 12 Mo. App. 214, affirmed in 77 Mo. 110;

Powell v. Commonwealth, 114 Pa. St. 265, affirmed in 127 U. S. 678.] And in cases, not so radical as these, which merely regulated the sale of such an article so that it could not be imposed upon the public as genuine butter. [State v. Rogers, 95 Me. 94; Commonwealth v. Huntley, 156 Mass. 236; State v. Armour Packing Co., 124 Iowa 323.] And in cases regulating the sale of milk by prohibiting artificial coloring. [City of St. Louis v. Polinsky, 190 Mo. 516.] In addition to these, we have been cited to two cases concerning the identical article here involved, and each being for the offense of false coloring. [People v. Girard, 145 N. Y. 105; Waller v. State, 53 Ohio St. 77.] In all these instances the statute was held to be within the power of the Legislature.

Those cases treat as unimportant the fact claimed here, that the coloring was harmless and left the article a wholesome food product. Nor was it considered that a label or brand would relieve the accused; for to the Legislature must be left the discretion to say whether fraud and deception may not result from their being unobserved by purchasers, or being partially concealed, or wholly removed. As said in State v. Addington, supra, the statute was intended "as a prevention of facilities for selling or manufacturing a spurious article resembling the genuine so closely in its external appearance as to render it easy to deceive purchasers into buying that which they would not buy but for the deception." Evidently the coloring, though harmless, in the sense of being unwholesome, was intended as a cheat. It rendered the vinegar a counterfeit of a genuine product. Manifestly, it was liable to deceive and therefore fully justified the Legislature in forbidding the act; that being a reasonable and necessary mode of preventing imposition. The discretion of the Legislature in exercising its police power extends up to the line of one's natural right guaranteed by the Constitution. That line is not always easily seen,

though in this instance we think it is clear it has not been crossed by this statute.

In deciding as we have, we are not under the necessity of approving all of the reasoning in the Addington and Powell cases, above cited, which, on the ground of preserving the public health, upheld the power, not to regulate, but to wholly prohibit the manufacture or sale of an article of food conceded to be wholesome and nutritious.

Many wholesome, palatable and popular articles of food were distasteful—perhaps obnoxious—when first offered to the public. Taste is often a matter of cultivation. Prejudice from association of ideas frequently is dispelled by repeated tests of the things once considered repulsive. So that if it be allowed to be within the power of the Legislature to wholly prohibit the manufacture of wholesome and nutritious articles of food against which there is a prejudice, or which is obnoxious to the palate, and on those grounds, the startling result is that all things new in the line of edibles may be forbidden; which is but saying that the majority, acting through the Legislature, may prescribe, in part, the diet of the minority.

Our decision can be placed on the ground of preventing the perpetration of a fraud, which, we think, is a safer and sounder reason than is found in parts of those decisions, especially as reported in the 12 Mo. App. The legislative declaration that vinegar kept for sale should not be artificially colored, is not a prohibition of its manufacture or sale; it is a mere regulation saying that it shall not be manfactured and sold with a false color, and a false color is a deception in which there cannot exist a vested right.

The strongest suggestion which occurs to us against the validity of the statute, relates to the right of the tradesman, constantly exercised since trade began, to make his wares attractive by appealing to the taste of consumers. The artisan makes articles of

brass and so fashions it that it looks like gold. He coats base metal with gold and with silver so that it seems to be the latter metals. He makes glass to appear like precious stones. The manufacturer colors his cloths, his silks, his ribbons and other articles of wearing apparel so that they become attractive to the eye and suitable to different tastes. Does the food manufacturer do any more when he recognizes that food made attractive to the eye finds easier sale? He puts pictures on a variety of goods and he displays liquids in colors, not to deceive, but to attract. The warning is given in Proverbs not to look "upon the wine when it is red," doubtless, in part, for the reason that in such color it was more tempting.

Now it might be said that defendant transfused a pleasing harmless color into his uninteresting white vinegar, with the legitimate and commendable purpose of making it attractive to customers by appealing to their fancy, and that he did not intend or entertain the mean purpose to defraud.

But these suggestions only bring us around to the question stated at the outset, viz., the authority and discretion of the Legislature, under its police power, exercised within reasonable bounds, to decide when an article which likely may be a fraud, or which may be calculated to work deception, will, in fact, hurt, and deceive the public. We are satisfied that we have shown in the present instance the statute has not overstepped the limit prescribed which secures the natural rights of the individual citizen, modified, as they necessarily are, for the general good of the whole. The natural right to do harmless acts is conceded; but though harmless in their general aspect, if they have a tendency to deceive others, they cease to be harmless, in that they afford a protection to other acts intended to be wrongful. In such case the difficulty—sometimes impossibility—of distinguishing between the fraudulent in-

tent and the harmless motive, will justify the Legislature in protecting the public at large by forbidding the act altogether.

We think the judgment should be affirmed. All concur.