STATE of Missouri, ex rel. Homer E.
SAYAD, et al., Plaintiffs,

v.

Thomas E. ZYCH, et al., Defendants.

No. 64264.

Supreme Court of Missouri,
En Banc.

Dec. 3, 1982.
Rehearing Denied Jan. 17, 1983.

Alan C. Kohn, John A. Klobasa, St. Louis, for plaintiffs.

Robert H. Dierker, Jr., Joseph R. Niemann, James J. Wilson, Edward J. Hanlon, St. Louis, for defendants.

HIGGINS, Judge.

The St. Louis Board of Police Commissioners seeks a writ of mandamus to compel the City of St. Louis to appropriate the amount of plaintiff's estimated and certified budget for the fiscal year beginning May 1, 1982. A preliminary order in mandamus was issued August 6, 1982. The question is whether the St. Louis Board of Police Commissioners is a "state agency" subject to the limitations of article X, section 21, of the Missouri Constitution. If the Police Board is a state agency, it is not entitled to a peremptory writ in mandamus. The preliminary order in mandamus is quashed.

The St. Louis Board of Police Commissioners was created by the Missouri Legislature (Act of March 27, 1861, 1861 Mo.Laws 446); it presently governs the St. Louis police force under sections 84.010 to 84.340 RSMo 1978. On March 31, 1980, the Police Board, pursuant to section 84.210.1 RSMo 1978,[1] certified its estimated budget for fiscal year 1980–81 in the amount of $66,634,713. The City adopted an ordinance, effective November 6, 1980, appropriating the amount of $65,334,715.[2] On November 4, 1980, the people of Missouri amended their constitution, article X, sections 16 through 24 (the Hancock Amendment), to provide *inter alia:*

> Section 21. *State support to local governments not to be reduced, additional activities and services not to be imposed without full state funding.* The state is hereby prohibited from reducing the state financed proportion of the costs

---

1. 84.210. *Board of police—annual estimate of expenses—claims for expenses* (St. Louis).—1. It shall be the duty of said boards, within thirty days after sections 84.010 to 84.340 shall take effect, and annually thenceforward on the thirty-first day of March of each year to prepare, in writing, an estimate of the sum of money which will be necessary for each current fiscal year, to enable them to discharge the duties hereby imposed upon them, and to meet the expenses of the police department, and they shall forthwith certify the same to the board of common council or municipal assembly, as the case may be, of said cities, who are hereby required to set apart and appropriate the amount so certified, payable out of the revenue of said cities, after having first deducted the amount necessary to pay the interest upon the indebtedness of said cities, the amount necessary for the expenses of the city hospital and health department, the amount necessary for lighting the city, and any sum required by law to be placed to the credit of the sinking fund of said cities.

2. Although the City is required to appropriate the entire amount certified by the Police Board, limited reductions have not always been challenged by the Police Board. Rather, the Police Board has negotiated increases at a later time if necessary. *State ex rel. Priest v. Gunn,* 326 S.W.2d 314, 317–18 (Mo. banc 1959). In March, 1981, the City agreed to make an additional $600,000 available to the Police Board. In actuality, the Police Board expended only $65,070,527 in fiscal year 1980–1981.

of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

This section became effective December 4, 1980. Mo. Const. art. XII, § 2(b).

■ The Police Board certified a budget in the amount of $73,179,726 for the fiscal year beginning May 1, 1981; the City appropriated that amount by ordinance.[3]

On March 31, 1982, the Police Board certified an estimate of expenses in the amount of $76,272,420. The City refused to appropriate that amount despite the requirement that the City "set apart and appropriate the amount so certified," section 84.210.1 RSMo 1978; and demanded the Police Board seek funding from the State of Missouri for the amount by which the Board's 1982–83 budget exceeded its 1980–81 budget. The City took the position that the Police Board is a state agency, and as such cannot compel the City to appropriate an amount of money above the amount appropriated by the City for use by the Police Board as of the effective date of article X, section 21.

On July 21, 1982, the City sought a writ of mandamus in St. Louis Circuit Court to compel the Police Board to seek funding from the State of Missouri in the amount the Police Board's 1982–83 budget exceeded its 1980–81 budget. On August 6, 1982, the Police Board filed this petition for writ of mandamus. Because adequate relief could not be afforded by the lower court, a preliminary order in mandamus was issued the same day.[4]

The present statutes governing the Police Board, sections 84.010 to 84.340, RSMo 1978 and Supp., carry forward the general nature and function of the original Police Board. The specific provisions of the original and present state statutes are similar. *Compare* sections 84.010 to 84.540 RSMo 1978 and Supp. *with* Act of March 27, 1861, 1861 Mo.Laws 446. They require that the Police Board be composed of the Mayor of St. Louis (or one who may be officially acting in that capacity) and four gubernatorial appointees; the powers and duties of the Police Board are prescribed; the Police Board is made responsible for the establishment and control of the St. Louis police force; the City of St. Louis is prohibited from interfering with the powers, or the exercise of the powers, of the Police Board. In addition, the statutes require that the Police Board estimate its annual expenses and that the City appropriate that amount.

Shortly after creation of the Police Board, this Court, in *State ex rel. St. Louis Police Commissioners v. St. Louis County Court*, 34 Mo. 546, 571 (1864), declared "the Police Commissioners are an agency of the State Government, and required to perform within a specified locality some of the most important duties of the government." This declaration was reiterated in *State ex rel. Hawes v. Mason*, 153 Mo. 23, 51, 54 S.W. 524, 531 (1899):

> The State levies and requires one of its own agencies to collect and pay over the tax to liquidate a certain, not an unlimited, sum, when demanded by its other agency, the board; and it does not lie in the mouth of the City to plead other obligations as superior to the demands of its creator.

The general assembly created a Kansas City Police Board similar to the St. Louis

---

3. Although the City appropriated more money for the Police Board in 1981–82 than it maintains the Hancock Amendment permits, the City is not estopped from alleging that the Hancock Amendment limits the Police Board's annual budget to the level required in 1980–81. *Gunn*, 326 S.W.2d at 325–26.

4. Inasmuch as the Police Board is presently operating on its certified budget for 1982–83, prompt disposition of this case has been undertaken.

Police Board. The legislation creating the Kansas City Police Board contains provisions similar to the original and present-day St. Louis Police Board statutes. §§ 84.350 to 84.890 RSMo 1978 and Supp. In *American Fire Alarm Co. v. Board of Police Comm'r*, 285 Mo. 581, 227 S.W. 114 (1920), this Court declared the Kansas City Police Board was also a state agency. *Id.* 285 Mo. at 589–92, 227 S.W. at 116–17; *see also State ex rel. Field v. Smith*, 329 Mo. 1019, 1026, 49 S.W.2d 74, 76 (1932) (where the Court accepted the proposition that the Kansas City Police Board was "a state agency, a department of the state government. . . .")

■ Several cases address whether police boards have authority to demand funds from their city. This Court said in the *Mason* case:

[T]he protection of life, liberty and property, and the preservation of the public peace and order, in every part, division, and subdivision of the State, is a governmental duty, which devolves upon the State, and not upon its municipalities. . . . From this duty, existing in the very nature of the state government, flows the corresponding power to impose upon municipalities of its own creation a police force of its own creation, and to compel its support out of municipal funds.

*State ex rel. Hawes v. Mason*, 153 Mo. 23, 43, 54 S.W. at 529. *Accord State ex rel. Reynolds v. Jost*, 265 Mo. 51, 175 S.W. 591 (banc 1915); *State ex rel. Spink v. Kemp*, 365 Mo. 368, 283 S.W.2d 502 (1955); *State ex rel. Priest v. Gunn*, 326 S.W.2d 314 (Mo. banc 1959); *ABC Security Service, Inc. v. Miller*, 514 S.W.2d 521 (Mo.1974). These cases hold that the State has the power to compel municipalities to fund a police force. The general assembly has delegated this authority in the City of St. Louis to the Police Board; and to the extent of the state's power, the Police Board can require the City to appropriate the sum certified by the Police Board to the City. Because the

Police Board performs these state functions, it is a state agency for purposes of article X, section 21, of the Missouri Constitution.

■ In *Boone County Court v. State of Missouri*, 631 S.W.2d 321 (Mo. banc 1982), this Court determined that powers of the general assembly are limited by article X, section 21. Section 50.330, RSMo 1978, required that salaries for county officers be drawn from the county treasury. After article X, section 21, became effective, the general assembly enacted section 52.420, RSMo Supp.1981, to increase the annual salary of collectors of second class counties by one hundred dollars. This Court held that article X, section 21, required the general assembly pay for such increases. *Id.* at 326. The Court reasoned that if the county paid the collectors more than was required by law after article X, section 21, became effective, an increase in the county's level of activity would result. Article X, section 21, prohibited the general assembly from requiring this increased activity unless a state appropriation was made to pay the county for the increased cost. *Id.* at 325–26. Similarly, article X, section 21, prohibits any state agency from requiring increased activity of counties or other political subdivisions. Consequently, the Police Board, as a state agency, cannot require the City, a political subdivision, to increase its level of activity beyond that required by law when article X, section 21, became effective unless a state appropriation is made to fund the increase.

The Police Board, noting that the City provided the total support for the Police Board prior to the Hancock Amendment, argues that article X, section 21, applies only where the state finances a portion of state mandated local activities. This argument is answered in the comparable situation presented in *Boone County* where the pre-Hancock statute required counties to pay the entire amount of county officers' salaries. This Court determined that when the general assembly subsequently mandated increases in these salaries, article X,

section 21, required a state appropriation to cover the cost of these increases.

■ The Police Board is also in error in its assertion that article X, section 21, does not apply to state agencies that are not a part of the state budgetary appropriation process. Article X, section 21, employs the words "any state agency." When the word "any" is used in a constitutional provision, its meaning is "all-comprehensive, and is equivalent to 'every'." *Boone County Court v. State,* 631 S.W.2d at 325.

■ The level of the City's activity in relation to the Police Board required by existing law upon the adoption of article X, section 21, was the amount certified by the Police Board for the fiscal year 1980–81. The City is required by section 84.210.1 RSMo 1978, to appropriate the certified amount unless the proposed expenditure is illegal, or a particular discretionary power given by the state to the Police Board has been arbitrarily or unreasonably exercised. *State ex rel. Sanders v. Cervantes,* 480 S.W.2d 888, 890 (Mo. banc 1972). There is no evidence that either of these exceptions apply; the certified amount of $66,634,713 is the amount required by existing law for purposes of article X, section 21. *Mason,* 153 Mo. at 53, 54 S.W. at 534. It would be unconstitutional for the Police Board to require the City to appropriate any more than $66,634,713, the budget certified as of the effective date of the Hancock Amendment. In seeking mandamus, the Police Board must stand upon the existence of a clear, unequivocal, and specific right to enforce an act required by law; the Court may not coerce the performance of an unlawful act. *State v. Gunn,* 326 S.W.2d at 325.

Article X, section 21, is explicit in its prohibition against state agencies requiring increased activity of cities or other political subdivisions without an attendant state appropriation to cover the increased cost. Mo. Const. art. X, § 21. The Police Board is a state agency subject to this prohibition. Therefore, the Police Board may not require the City to fund an increase in its budget above the amount certified in fiscal year 1980–81 but must look to the general assembly to fund the increase.

Accordingly, mandamus will not lie to compel the City to fund the increase in the Police Board's certified budget for fiscal year 1982–83, and the preliminary order obtained to that purpose is quashed.

DONNELLY, C.J., and SEILER and WELLIVER, JJ., concur.

GUNN, J., dissents in separate dissenting opinion filed.

RENDLEN, J., and FINCH, Senior Judge, dissent and concur in separate dissenting opinion of GUNN, J.

BILLINGS, J., not participating because not a member of the Court when cause was submitted.

GUNN, Judge, dissenting.

The majority opinion holds that the St. Louis Board of Police Commissioners (Police Board) is a state agency within the meaning of Art. X, § 21, Mo. Const. (Hancock Amendment). Hence, according to the majority, the strictures of the Hancock Amendment apply to limit any increase in the budget of the Police Department of the City of St. Louis. I disagree with the premise and conclusion of the majority.

The Police Board has presented the police department budget, representing an increase from the previous fiscal year, to the St. Louis Board of Aldermen for implementation. As on many prior occasions, the Board of Aldermen has opposed the increase, this time asserting the Hancock Amendment. Under today's holding, however, the Board of Aldermen for the first time will assert its influence over the St. Louis Police Board and tear away the protective abatis that was established over 120 years ago to prevent the Aldermen's intrusion upon the Police Board's authority over budgetary affairs.

The Police Board and its relationship with the St. Louis Police Department was structured specifically to maintain a relationship between the metropolitan police and the St. Louis City government that (1) provided effective public safety while, (2) it removed control of the police from local government pressures and maneuverings. This structure has survived more than a century of repeated undulations by local authorities seeking to enervate its purpose. Indeed, in the course of 120 years, the statutory scheme underpinning this structure has been re-enacted several times and judicially construed under constitutional provisions themselves subsequently re-enacted. Thus, far from being eroded, the autonomy of the Police Board has heretofore been confirmed repeatedly.

Today's holding in effect renders unconstitutional this thoughtfully wrought structuring of police and local government authorities and pierces this protective body of statutory law. To say that the people intended this result with the Hancock Amendment does not ring true to me: I cannot find that with the phrase "state agency," the people have expressed their will to compromise the purpose, meaning or effectiveness of the St. Louis Police Board or its relationship with the St. Louis Police Department.

In construing constitutional provisions and determining whether a statute has been abrogated by constitutional amendment, two factors should be considered: (1) the nature of the instrument; and (2) the nature of the governmental powers involved. For the nature of the instrument and of the executive powers dictate the rules of construction and whether the practical and plain meaning of the words will be applied or whether their application will be distended to the parameters of possibility.

Unlike the United States Constitution, which is a grant of power, the Constitution of the state of Missouri is an instrument of limitation. Thus, except for restrictions imposed by the state Constitution, the power of the state legislature is unlimited and practically absolute. *Menorah Medical Center v. Health & Educational Facilities Authority,* 584 S.W.2d 73, 77 (Mo. banc 1979); *Americans United v. Rogers,* 538 S.W.2d 711, 716 (Mo. banc 1976), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); *State ex inf. Danforth v. Merrell,* 530 S.W.2d 209, 213 (Mo. banc 1975); *Three Rivers Junior College District of Poplar Bluff v. Statler,* 421 S.W.2d 235, 238 (Mo. banc 1967). Because the instrument is one of limitation and not of grant, limitations on legislative bodies, both city and state, must be strictly construed in favor of the power of the legislative body. The limitation is not to be extended beyond its terms. *Abernathy v. City of St. Louis,* 313 S.W.2d 717, 719 (Mo.1958); *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 166 (1956). See Bardgett, J., dissenting, *Boone County Court v. State,* 631 S.W.2d 321, 327 (Mo. banc 1982).

Two primordial powers inherent in the General Assembly are the police power for protection of the people and the power to pay for that protection, *i.e.,* production of revenue. After all, these are the fundamental bases for governmental existence.

The "police power" of a state is the exercise of the sovereign right of a government to promote order, safety, health, morals and the general welfare within constitutional limits and is an essential attribute of government. *Marshall v. Kansas City,* 355 S.W.2d 877, 883 (Mo. banc 1961). Moreover, this power resides in the legislature and is a power to be exercised within wide limits of legislative discretion. *Caesar's Health Club v. St. Louis County,* 565 S.W.2d 783, 786 (Mo.App.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *State v. Addington,* 12 Mo.App. 214, 220–21, *aff'd,* 77 Mo. 110 (1882). The police power of the legislature is only limited by the rights guaranteed by the Constitution, by the principle that the police power may be exercised only for a legitimate public purpose, and by the rule implicit in due process that

it must be exercised reasonably. *State ex rel. City of Macon v. Belt,* 561 S.W.2d 117, 118 (Mo. banc 1978); *City of Cape Girardeau v. St. Louis-San Francisco Ry. Co.,* 305 Mo. 590, 267 S.W. 601, 604 (1925); *Ex parte Taft,* 284 Mo. 531, 225 S.W. 457, 461 (1920); *Valley Spring Hog Ranch Co. v. Plagmann,* 282 Mo. 1, 220 S.W. 1, 6 (1920); *State v. Earl,* 152 Mo.App. 235, 133 S.W. 402, 403 (1911).

Like the police power, the power to tax is a governmental function inherent in the state. *Grant v. Kansas City,* 431 S.W.2d 89, 92 (Mo. banc 1968). It resides in the legislature and may be exercised subject only to constitutional limitation. *General Installation Co. v. University City,* 379 S.W.2d 601, 604 (Mo.1964).

The syllogistic conclusion following from the foregoing premises is that constitutional provisions confining the legislature's exercise of police and taxing powers must be strictly construed. *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 166 (1956). Although a law conflicting with a constitutional provision is void, *Matter of Additional Magistrates for St. Louis County,* 580 S.W.2d 288, 298 (Mo. banc 1979), constitutional trammeling upon acts of the legislature should not occur if reasonable doubt as to their repugnancy to an act exists in the judicial mind. *Ludlow-Saylor Wire Co. v. Wollbrink,* 275 Mo. 339, 205 S.W. 196, 197 (1918); *State ex rel. Jardon v. Industrial Development Authority,* 570 S.W.2d 666, 673 (Mo. banc 1978); *State ex rel. Farmer's Electric Cooperative, Inc. v. State Environmental Improvement Authority,* 518 S.W.2d 68, 72 (Mo. banc 1975).

Other canons of construction also apply: Words are to be given their plain and ordinary meaning so as to effectuate the intent of the legislature. *Citizens Bank & Trust Co. v. Director of Revenue,* 639 S.W.2d 833 (Mo.1982). A constitutional provision should not be construed to work confusion or mischief unless no other reasonable construction is possible. *Three Rivers Junior College District of Poplar Bluff v. Statler,*

421 S.W.2d at 242. The later adoption by subsequently enacted constitutional provision of the words and context of another constitutional provision that has been construed by this Court is presumed, in the absence of contrary intention, to have been done to give the adopted words their adjudicated meaning. *Rathjen v. Reorganized School District,* 365 Mo. 518, 284 S.W.2d 516, 520 (1956).

Now, to the case at hand. The majority finds that the Police Board is a state agency firmly tethered to the bounds of the Hancock Amendment. Art. X, § 21, Mo. Const. And, indeed, it does bear certain marks of a state agency. But it is functionally and substantially more, and I contend its place is not to be found within the Hancock Amendment. The history and present physique of the St. Louis Police Department and the Police Board and the place they hold in the organization of state government logically compels such a conclusion.

I.

A diachronic view of the Board provides some evidence of the Board's character. Before 1861, the St. Louis Police Board was under the control of the city. In that year, a metropolitan police force was created by an act of the legislature. Laws 1860–61, p. 446. That statute set up a board of police commissioners comprised of the mayor of the city and four commissioners appointed by the governor. Section 14 of the act of 1861 stated: "From and after the first meeting aforesaid, the whole of the then existing police force of the City of St. Louis, both officers and men, shall pass under the exclusive management and control of the said board, and be subject to no other control, and entitled to receive no orders or pay ... from any other authority ...." Whether the Board itself was in the control of state and local politicians was a matter hotly disputed among the muckrakers in the later nineteenth century. Nevertheless, the purpose of the statute was to remove the finances and administration of

the police force from the influence of local politics. *State ex rel. Mason v. Hawes,* 153 Mo. 23, 54 S.W. 524, 529 (1899).

Between the enactment of the first organic act creating the Board in 1861 and its repeal and the enactment of a second organic act on March 15, 1899 (Laws Mo.1899, p. 51), the people of Missouri adopted the Constitution of 1875 and provided that the City of St. Louis might frame its own charter, to be in harmony with and subject to the laws of Missouri. Const.1875, art. 9, §§ 20, 23–25. In 1899, referring to that constitutional provision and the act of 1899, this Court noted that the first charter of St. Louis City expressly stated "that no system of police shall be established or maintained other than the present metropolitan system as long as the same is established by law." *State ex rel. Mason v. Hawes,* 54 S.W. at 526.

This metropolitan system has remained, established by law, down through the current §§ 84.010–84.220, RSMo 1978. Art. 6, § 31 of the Mo. Const. continues to provide that the charter of the City of St. Louis is "subject to changes and amendments provided by the constitution or bylaw, and with the powers, organization, rights and privileges permitted by this constitution or by law." Finally, the current charter of St. Louis City states that the city has the power "[t]o provide and maintain police and excise departments when permitted by law." Art. I, section 1, subsection 21. And the annotated subsection refers to §§ 84.-010–84.340 of the Missouri statutes. In the 120 year history of the metropolitan police force, statute, ordinance, case law and constitution have been interdigitated to define its character.

The present organic statute, Chapter 84, provides synchronic evidence of the Board's nature. This statute articulates four general provisions: 1) membership on the Board; 2) its duties and powers; 3) internal housekeeping; and 4) autonomy from outside influences.

Membership: The Police Board is comprised of the St. Louis City mayor and four commissioners appointed by the governor with advice and consent of the Senate. Sections 84.020, 84.030, 84.040 and 84.080, RSMo 1978.[1]

Duties and powers are clearly defined in § 84.090, including the power to appoint a police force. Sec. 84.100.

Housekeeping details for the police force and police board are fully articulated in Chapter 84.

The provisions for autonomy are clear and precise: First, the City ordinances are not to conflict with the powers of the Police Board. Section 84.010, RSMo 1978. Second, the Police Board and not the City controls the budget. Section 84.210, RSMo 1978; *State ex rel. Sanders v. Cervantes,* 480 S.W.2d 888, 890 (Mo.1972). Third, § 84.220, RSMo 1978, provides:

Any officer or servant of the mayor or common council or municipal assembly of the said cities, or other persons whatsoever, who shall forcibly resist or obstruct the execution or enforcement of any of the provisions of sections 84.010 to 84.340 or relating to the same, or who shall disburse any money in violation thereof, or who shall hinder or obstruct the organization or maintenance of said board of police, or the police force therein provided to be organized and maintained, or who shall maintain or control any police force other than the one therein provided for, or who shall delay or hinder the due enforcement of sections 84.010 to 84.340 by failing or neglecting to perform the duties by said sections imposed upon him, shall be liable to a penalty of one thousand dollars for each and every offense, recoverable by the boards by action at law in the name of the state, and shall forever thereafter be disqualified from holding or exercising any office or employment whatsoever under the mayor or common council or municipal assembly of

---

1. Statutory references are to RSMo 1978 unless otherwise indicated.

said cities, or under sections 84.010 to 84.340; provided, however, that nothing in this section shall be construed to interfere with the punishment, under any existing or any future laws of this state, of any criminal offense which shall be committed by the said parties in or about the resistance, obstruction, hindrance, conspiracy, combination or disbursement aforesaid.

Fourth, § 84.330, RSMo 1978, states that police force members are officers of the state as well as of the city. Finally, this Court has held from their inception that the metropolitan police forces were in the exclusive management of the boards. *Sanford v. Kansas City,* 69 Mo. 466, 467 (1879).

A look at the history and present statute regulating the metropolitan police force dictates one conclusion: it is to be free from the influence of the City of St. Louis, yet it is to serve that city.

## II.

The second consideration is the place of the Board and metropolitan police force in the current structure of the state's government. The current structure of the state's government is articulated in the Reorganization Plans submitted pursuant to the provisions of §§ 26.500 to 26.540, RSMo 1978, and to the Omnibus State Reorganization Act of 1974, § 1, as amended. Sections 26.500 to 26.540 allow the governor to submit to the legislature plans of reorganization of the executive agencies of state government. Such plans not disapproved by one or the other house of the legislature within sixty days of submission by the governor have the force of a statute.

The Reorganization Act of 1974 contemplated a comprehensive restructuring of state agencies, and that Act, together with subsequent departmental plans adopted pursuant thereto and to § 26.500 to 26.540, offers a detailed, practical view of state agencies in Missouri. Section 1, subsection 5.1, specifically lists all departments and agencies of state government. Sections 2–15 articulate each of these departments, and the appendices to the General Index of RSMo 1978 contain the Reorganization Plans and illustrative diagrams. No amount of searching into these sections, into the departmental plans adopted, or into the illustrative diagrams will reveal any allocation of provisions for the Police Board; it is not even mentioned. The Police Board receives neither money nor orders from any department of the state government, from the governor directly, or from the legislature.

## III.

Functionally, what, then, is the place of the Police Board and the metropolitan police force among the organs that serve the people of Missouri? First, the police unquestionably serve a purpose which is of statewide rather than of merely local concern. Second, the organic laws regulating the Board spring from the General Assembly rather than from the City. Third, four out of five of the Commissioners on the Police Board are chosen by the governor. On the other hand, the police for the most part serve only the City of St. Louis. They receive no orders nor money from any agency or department of the state government. That is, the police and Police Board do not *serve* the people of Missouri as a whole in the way that the agencies and departments mentioned in the Omnibus State Reorganization Act serve them; nor are the Police Board and Police so financed and administered.

The explanation and name for this creature are to be found in its history. The parent of the metropolitan police force was a municipal police force. And it continues to be a municipal police force insofar as it serves and is paid for by the City. Its final reason for being is the City, not the state as a whole in the sense that the State Highway Patrol is a servant of the whole state. And to declare that it serves a statewide purpose is only to assert a truism: that the

police power inheres in the state and not in a municipal corporation. In order, however, to remove the police force from the influence of politics in a city that by the turn of the last century was the fourth largest in the United States, the General Assembly removed its control from the local political forces. But that control was not placed in the state government. It was, instead, placed in a Board of Commissioners who by state statute are appointed by the governor but who must be local in residence. The control, thus, did not pass to the state. It was simply removed from the City by the state and placed in an independent agency. The net result is that the state does not police the City of St. Louis; but the state has dictated in precise terms how the City of St. Louis will be policed. Thus, while the formal cause of the Board is a state statute, its material, efficient and final causes are the City of St. Louis.

It is, as is urged by the Board, a hybrid agency, bearing characteristics of both local and state agency and is manifestly not a body contemplated within the Hancock Amendment. It is to remain autonomous from the influence of local political forces and because of its nature, without the contemplation of the Hancock Amendment.

The majority opinion alters the character of the St. Louis metropolitan police force and makes it a state agency for part of its appropriations, although it serves only St. Louis City and is not part of the state agency organization. That invalidates the intention of Chapter 84 of the Missouri Revised Statutes. I believe that this goes far beyond anything contemplated by the Hancock Amendment and is out of phase with the rubric of statutory construction indited at the outset of this dissent.

The conclusion I reach is two-pronged: (1) Through a meld of state and local agency traits, the St. Louis Police Board and the Police Department do not fall strictly within the Hancock Amendment's "state agency" definition. So an increase in the police force budget proposed by the Police Board does not run afoul of Hancock. (2) Nor will the City of St. Louis by increasing the Police Department's budget run aground on Hancock. The City need not raise its total budget because of the Police Board's action—only that percentage applicable to police services, although at the expense of other departments. This is congruent with *State ex rel. Priest v. Gunn,* 326 S.W.2d 315, 327 (Mo. banc 1959).

To meet the purpose of the Hancock Amendment head-on: The substance of this dissent would do no violence to the theory of that amendment, which is to put a lid on taxes. While the overall budget for police purposes is increased, the total budget for the citizens need not be; and, after all, it seems it is the total budget to which the Hancock Amendment is aimed. *Boone County Court v. State,* 631 S.W.2d at 325.

The cases cited in the majority opinion referring to the Police Board as being a state agency do not foreclose acceptance of this dissent's interpretation of the law. For example, *Harris v. William R. Compton Bond & Mortgage Co.,* 244 Mo. 664, 149 S.W. 604 (1912), *State ex rel. Hawes v. Mason,* 153 Mo. 23, 54 S.W. 524 (1899), and *State ex rel. St. Louis Police Commissioners v. St. Louis County Court,* 34 Mo. 546 (1864), hold primarily that the metropolitan police force serves a statewide rather than a merely local or private concern, and just as any organ of local government, it is dependent upon the state's sovereignty for its authority. These propositions apply to every municipal police force in the state. But not all, then, are functionally state agencies, and the cases cited by the majority are no predicate for such a conclusion. But this dissent does not reject the state agency purpose of the Police Board in the total sense, for the Board is a state agency for some purposes but not for others. The Police Board is truly a hybrid agency not falling within the Hancock Amendment. Thus, this dissent is not at war with the cases cited in the majority opinion.

I find nothing illegal in the proposed budget or that the discretionary power giv-

en to the Police Board has been arbitrarily and unreasonably exercised. *State ex rel. Sanders v. Cervantes,* 480 S.W.2d at 890.

For the reasons set forth, I would make the writ of mandamus peremptory to compel the City of St. Louis to appropriate the amount of the Police Board's budget for the fiscal year as requested.

