CITICASTERS, INC., d/b/a
WDAF–TV, Plaintiff,

v.

Claire McCASKILL et al., Defendants.

No. 94–0748–CV–W–2.

United States District Court,
W.D. Missouri,
Western Division.

Feb. 1, 1995.

Shari S. Weinman, Shook, Hardy & Bacon and Sam L. Colville, Holman, McCollum & Hansen, P.C., Kansas City, MO, for plaintiff.

James B. Storkamp, J. Earlene Farr, Jackson County Courthouse Counselor's Office; and Dale H. Close, Kansas City Police Dept., Legal Advisor's Office, Kansas City, MO, for defendants.

## ORDER

GAITAN, District Judge.

## I. INTRODUCTION

Plaintiff in the above titled case is in the business of television broadcasting. This lawsuit arises from plaintiff's August 5, 1994, broadcast of a videotape which showed the abduction of a woman, Julia A. Flege, by a man later identified as Chancey E. Wright. After her abduction, Ms. Flege was murdered and Wright was apprehended in connection with this crime.

Plaintiff purchased the videotape of Ms. Flege's abduction from Earl Warren, a private citizen, believed to be a resident of Arlington, Texas. Mr. Warren was videotaping scenes around the Liberty Memorial in Kansas City, Missouri when by chance he videotaped the abduction of Ms. Flege. Mr. Warren thereafter contacted the plaintiff and offered to allow plaintiff to make a copy of the tape. The plaintiff copied Mr. Warren's tape and broadcast portions of this tape on its 6:00 p.m. newscast on August 5, 1994. Mr. Warren reportedly left Kansas City with the original tape, shortly after this broadcast.

Also shortly after the broadcast, Detective Vince McInerney of the Kansas City, Missouri, Police Department contacted the plaintiff's business and expressed an interest in the videotape. Captain McInerney spoke with the Plaintiff's assignment manager, Michael Lewis. Mr. Lewis informed Captain McInerney that Mr. Warren had left town with the original tape. Mr. Lewis further stated that the police could view plaintiff's copy of the videotape, but they could only obtain a copy of it through a subpoena.

That evening, defendant Ronald Parker, a police officer with the Kansas City, Missouri, Police Department, submitted an affidavit/application for a search warrant. A search warrant was issued at 9:20 p.m. At approximately 10:00 p.m. that evening, defendants Parker and Claire McCaskill, the Prosecuting Attorney of Jackson County, Missouri, assisted in executing the search warrant on plaintiff at its business premises. The subject of this search warrant was "[t]he original video cassette tape, and copies of the video cassette tape, which show the abduction of Julia A. Flege."

Plaintiff brings this claim against defendants Parker and McCaskill for their participation in execution of the search warrant. Plaintiff also brings a claim against the Board of Police Commissioners of Kansas City, Missouri, through the individual members of the Board. Plaintiff brings its claims against the defendants for their actions in their official capacity only. Plaintiff contends that the seizure of the videotape was a violation of the 42 U.S.C. § 1983 (1988) and the Privacy Protection Act of 1980 (Privacy Protection Act), 42 U.S.C. §§ 2000aa–2000aa–12 (1988).

This court held a hearing in this case on August 11 and 12, 1994, during which plaintiff and defendants presented evidence. At the close of this hearing both plaintiff and defendants indicated that there was no need

to present further evidence and that after briefing, plaintiff's complaint would be ready to rule. Plaintiff and defendants have submitted their briefs in this matter and accordingly, the court now addresses the merits of plaintiff's claims.

## II. APPLICABILITY OF THE PRIVACY PROTECTION ACT

Key to deciding the claims raised by plaintiff is determining the applicability of the statute on which plaintiff bases its claims. Defendants have raised various arguments as to why the Privacy Protection Act does not apply to the facts of this case and to these defendants. The court, therefore, first considers whether this statute provides an appropriate basis for the relief that plaintiff seeks.

The Privacy Protection Act provides in relevant part:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigations or prosecution of a criminal offense, to search for or seize documentary materials ... possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communications, in or affecting interstate or foreign commerce....

42 U.S.C. § 2000aa(b). The Act also has a similar provision which applies to work product materials. 42 U.S.C. § 2000aa(a). Thus, the Privacy Protection Act limits governmental search and seizure of documentary materials possessed by persons engaged in First Amendment activities. The Act further provides a remedy for persons aggrieved by violations of its provisions. 42 U.S.C. § 2000aa–6.

### A. Applicability to this Case
#### 1. Documentary Materials versus Work Product

■ Count I of plaintiff's complaint alleges that defendants violated the Privacy Protection Act by seizing "documentary materials" through the execution of the search warrant. At the outset, the court recognizes that the Act defines documentary materials as includ-

ing "video tapes." 42 U.S.C. § 2000aa–7(a). Therefore, the court has no difficulty characterizing the videotape at issue in this lawsuit as a documentary material for purposes of applying the Act. Plaintiff has also alleged in its opening brief, however, that the videotape is "work product material." The Act defines "work product materials" as materials which

> (1) in anticipation of communicating such materials to the public are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person;

> (2) are possessed for the purposes of communicating such materials to the public; and

> (3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material.

42 U.S.C. § 2000aa–7(b). The court cannot agree with the characterization of the videotape in question as "work product" because it was not produced "in anticipation of communicating" it to the public. Rather, Mr. Warren unintentionally taped the abduction of Ms. Flege. Consequently, the court will not apply those provisions of the Privacy Protection Act which pertain to work product materials to the facts of this case.

#### 2. Dissemination to the Public

■ Defendant McCaskill argues that the Privacy Protection Act does not apply to the seizure of the videotape in this case because it was not possessed with a purpose to disseminate it to the public. Defendant notes that upon execution of the search warrant, plaintiff offered defendants a copy of its news broadcast which showed parts of the videotape at issue. Thus, defendant concludes that the "documentary materials" upon which plaintiff bases its Privacy Protection Act claim are those portions of the videotape which plaintiff did not show on its news broadcast. Defendant contends that because plaintiff had no intention to disseminate those portions of the videotape to the public, they were not within the purview of the Act.

Recognizing that the Privacy Protection Act was a response to the Supreme Court's holding in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), this court cannot agree with McCaskill's interpretation of the Act. In *Zurcher*, the STANFORD DAILY, a student newspaper, published articles and photographs of a demonstration which injured several police officers. *Id.* at 551, 98 S.Ct. at 1974. The district attorney's office, acting on the belief that the paper possessed additional photographs which could help identify the individuals who assaulted the police, secured a search warrant to search the newspaper office. *Id.* The police warrant covered all photographs and negatives of the demonstration in the possession of the STANFORD DAILY. *Id.* The Court in *Zurcher* held that the Fourth Amendment does not confer any special protections against search and seizure for the possessor of documentary evidence who is not a suspect in the offense under investigation. *Id.* at 560, 98 S.Ct. at 1979. Thereafter, Congress enacted the Privacy Protection Act providing protection against the type of search and seizure executed in *Zurcher*.

This case is similar to *Zurcher* because in both cases, the plaintiff published a portion of the materials that were ultimately searched and seized. In enacting protection for materials held by plaintiffs engaged in First Amendment activities, Congress made no distinctions based on whether a plaintiff had published the materials. In fact, to make such a distinction would defeat the purpose of the Act because government officials presumably will have less interest to search and seize materials that have been made public.

Furthermore, the language in the Act itself leads the court to reject defendant's narrow interpretation of the statute. The Act applies to documentary materials or work product "possessed by a person *in connection with* a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa (emphasis added). Thus, the statute requires only that the materials be connected with a public communication. Defendant's interpretation, affords protection only to materials that are publicly communicated, and is not supported by the language of the statute. The materials seized by the defendants were connected with plaintiff's news broadcast on August 5, 1994. Consequently, the court finds that they are the type of documentary materials protected by the Privacy Protection Act.

### 3: Availability of a Subpoena Duces Tecum

█ Defendants maintain that because the Privacy Protection Act provides for use of a subpoena duces tecum as the means of obtaining materials from persons engaged in First Amendment activities, the Act applies only when a government entity has the power to secure a subpoena. Alternatively, defendants argue that the Act merely mandates that a subpoena process be used prior to the search warrant process and that if a subpoena is not available, government entities may initiate a search warrant. Thus, defendants argue against application of the Privacy Protection Act in this instance because they lacked the ability to secure a subpoena duces tecum.

In support of this claim defendants contend that under Missouri law, law enforcement officials cannot obtain a subpoena duces tecum in a criminal investigation or prosecution, but rather, only in connection with a pending case. Defendants argue that at the time of their investigation and alleged need for plaintiff's videotape there was no pending case. Defendants also assert that a subpoena was not available through a grand jury because it was not scheduled to meet until the week after the materials were sought.

Plaintiff asserts that the unavailability of a subpoena does not justify defendants' use of a search warrant. Plaintiff contends that the legislative history of the Act specifies that Congress gave state and local governments one year following enactment before the Act would apply to them so that the governments would "have sufficient time to make any necessary procedural changes in their laws to comply with [the Act]." 1980 U.S.C.C.A.N. 3950, 3964. Thus, plaintiff argues that Missouri's failure to make the necessary changes in its procedural law does not render the Act ineffective.

The court does not accept defendants' arguments that because they lacked the ability to secure a subpoena, the Act either did not apply or allowed them to proceed with the use of a search warrant. The court is persuaded by the fact that Congress gave states and local governments one year in which to make procedural changes to their laws to comply with the Act. The state of Missouri and its local law enforcement agencies cannot now circumvent the Act because the State failed to enact procedures consistent therewith. Thus, the court refuses to find that provisions of the Act do not apply when a subpoena process is unavailable.

### 4. Exception to the Act

■ Defendants assert that the search and seizure of plaintiff's videotape falls under one or more exceptions to the Privacy Protection Act. Thus, defendants contend that under the Act they were not required to obtain the tape through a subpoena duces tecum.

The Act allows for immediate seizure of materials if there is reason to believe that it is "necessary to prevent the death of, or serious bodily injury to, a human being." 42 U.S.C. § 2000aa(b)(2). Defendants maintain that the videotape was essential in filing murder charges against Chancey Wright. Defendants contend that they had reason to believe that if Wright was released from custody he would pose a danger of injury or death to the witnesses to the abduction and/or the public at large.

The Act also allows for search and seizure if "there is reason to believe that the giving of notice pursuant to a subpoena duces tecum would result in the destruction, alteration, or concealment of such materials." 42 U.S.C. 2000aa(b)(3). Defendant McCaskill claims that this exception applies because the nature of plaintiff's business is such that editing and other forms of alteration of tape may be presumed to occur with some frequency. Thus, defendant contends that a reasonable law enforcement official could reasonably believe that plaintiff, having aired only a portion of the videotape, would discard, edit, or otherwise alter the remaining tape in the week it would take to procure a subpoena duces tecum from the grand jury.

Plaintiff notes that defendants did not raise concerns for the safety of third parties or for the integrity of the videotape in the application for a search warrant. Plaintiff further maintains that the legislative history of the Act shows that Congress intended the factual basis for exceptions be presented to the magistrate or judge from whom a search warrant is sought. Indeed, the legislative history of the Act, in discussing an exception to the Act suggests factors to be "considered by a magistrate." 1980 U.S.C.C.A.N. 3950, 3954.

Thus, the question for the court to consider is whether the defendant may claim an exception to the Act when the application for the search warrant is devoid of reasons supporting the exception. The court finds that to allow a defendant to claim an exception, after a search and seizure has occurred, allows a defendant to justify its conduct in hindsight. The legislative history of the Act envisioned that a defendant would state the basis for exceptions when applying for the warrant. Moreover, if circumstances exist which constitute an exception, the defendant should state these reasons in an affidavit for a warrant. Thus, because the affidavit in support of the search warrant did not set forth reasons which fall under an exception to the Act, the court will not allow defendants to now invoke those exceptions.

### 5. Effect of State Criminal Investigation

■ Defendant members of the Board and defendant Parker suggest that the Privacy Protection Act is not applicable to the investigation of a state murder case. Defendants note that police power is reserved to the states by virtue of the Tenth Amendment and that the federal government lacks this power. Thus, defendants reason that the Privacy Protection Act cannot limit an investigation of a state murder case because enforcement of the Act in such a manner constitutes an improper infringement on the state's police power. The court disagrees with this characterization of the Act. The Supreme Court has held that protection against the federal government's interference with state functions lies in the built-in restraints that our system provides through

state participation in federal governmental action. *Garcia v. San Antonio Metro. Transit Auto.,* 469 U.S. 528, 556, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985). Thus, absent an egregious invasion of state police power, which the court finds does not exist here, this court will not entertain a Tenth Amendment challenge to the Privacy Protection Act.

## B. Remedies Available Under the Act

### 1. Injunctive Relief

■ Defendants have also challenged plaintiff's claim for injunctive relief under the Privacy Protection Act. Defendants contend that a cause of action for damages is the exclusive remedy provided by the Act.

In evaluating defendants' argument against injunctive relief, it is critical to consider the cause of action which is created by the Act. The Act provides:

(a) A person aggrieved by a search for or seizure of materials in violation of the chapter shall have a civil cause of action for damages for such search or seizure—

(1) against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment; and

(2) against an officer or employee of a State who has violated this chapter while acting within the scope or under color of his office or employment, if such State has not waived its sovereign immunity as provided in paragraph (1).

42 U.S.C. § 2000aa–6(a). Thus, the Act provides a cause of action against the United States, a state which has not waived sovereign immunity, or a governmental unit. § 2000aa–6(a)(1). If a state has not waived sovereign immunity, the Act alternatively provides a cause of action against an officer or employee of the state. § 2000aa–6(a)(2).

The Act also provides that the remedy set forth in section 2000aa–6(a)(1) "against the United States, a State, or any other governmental unit is exclusive of any other civil action or proceeding for conduct constituting a violation of this chapter, against the officer or employee whose violation gave rise to the claim, or against the estate of such officer or employee." 42 U.S.C. § 2000aa–6(d). Defendants construe this provision as specifying that a cause of action for damages is the exclusive relief available to a claimant. The court disagrees with this interpretation. The legislative history of the Act as well as the language of the statute indicate that this provision pertains to remedies against both a government entity and an officer or employee of that entity. The provision dictates that a remedy against the government entity is exclusive and, therefore, a plaintiff may not also recover from an employee or officer. Thus, defendants' arguments that injunctive relief is precluded by the Act are without merit.

### 2. Injunctive Relief in this Case

Having found that injunctive relief is a remedy available to the plaintiff under the Act, the court finds it appropriate, at this juncture, to also addresses the appropriateness of this remedy. Plaintiff seeks an injunction directing defendants to return to plaintiff its copy of the subject videotape and also that defendants be enjoined in the future from seizing plaintiff's documentary materials except in accordance with law.

With regards to plaintiff's request for return of its videotape, the court notes that at the hearing held on August 12, 1994, defendants agreed to return to plaintiff the videotape seized on August 5. The court was under the impression that the tape was returned to plaintiff. Indeed, defendants contend that the original tape has been returned to plaintiff. Plaintiff, however, claims that its request for injunctive relief for return of the videotape is not mooted because defendants have provided plaintiff with a copy of the videotape in question. Plaintiff maintains that defendants still retain the original videotape. It was this court's understanding that the original videotape was returned to the plaintiff. Thus, the defendants shall return the original videotape to the plaintiff if they have not already done so.

■ With regards to plaintiff's request for an injunction against defendants seizing plaintiff's materials in the future except in accordance with law, there are four factors which the court must evaluate:

1. Is there a substantial threat that the plaintiff will suffer irreparable harm if relief is not granted;

2. Does the irreparable harm to the plaintiff outweigh any potential harm that granting a preliminary injunction may cause the defendant;

3. Is there a substantial probability that the plaintiff will prevail on the merits; and

4. The public interest.

*Dataphase Sys. Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court must balance the four factors to determine whether a preliminary injunction is warranted. *Id.* The plaintiff bears the burden of proof concerning the four factors. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987).

■ To satisfy the element of threat of irreparable harm, the plaintiff must prove that harm will result without injunctive relief and the harm will not be compensable by money damages. *Bloom v. O'Brien,* 841 F.Supp. 277, 279 (D.Minn.1993). Possible or speculative harm is not enough to warrant a preliminary injunction. *Id.* Plaintiff states that it "is interested in seeing that this situation never again occurs; that in the future these defendants respect plaintiff's rights under the statutes and the U.S. Constitution." Plaintiff further states that "there is not reason to believe that they [defendants] would not [seize materials] again." While plaintiff states a general concern against seizure of its materials in the future, it has provided no evidence that such a seizure is likely to occur. The mere possibility of harm is not enough to warrant an injunction of future activity. Consequently, plaintiff's claim for future injunctive relief under the Privacy Protection Act is denied. Moreover, because plaintiff has also made a claim for injunctive relief pursuant to 42 U.S.C. § 1983, that claim is similarly denied for the reasons stated herein.

### 3. Plaintiff's Right to Submit an Affidavit

■ Plaintiff contends that it was entitled, under the Act, to submit an affidavit in opposition to the issuance of a search warrant and seizure of the videotape. Plaintiff bases its argument on the following provision in the Act: "In the event a search warrant is sought pursuant to paragraph (4)(B) of subsection (b) of this section, the person possessing the materials shall be afforded adequate opportunity to submit an affidavit setting forth the basis for any contention that the materials sought are not subject to seizure." 42 U.S.C. § 2000aa(c). Paragraph (4)(B) referred to in this provision allows search and seizure of materials when the materials have not been produced in response to a subpoena duces tecum. In opposition, defendants argue that Missouri law makes no provisions for the subject of a search warrant to file an affidavit or otherwise present opposition to the warrant.

In the instant case, no subpoena duces tecum was issued to the plaintiff before execution of the search warrant. A literal reading of the statute reveals that an affidavit can only be submitted when a search warrant is obtained after non-compliance with a subpoena duces tecum. Thus, because no subpoena duces tecum was issued in the first instance, it would appear that plaintiff had no right to submit an affidavit.

■ The primary purpose of the Act, however, is to protect persons engaged in First Amendment activities from seizure of materials. The Act provides this protection first and foremost by requiring government entities to use a subpoena duces tecum when seeking materials. The right to submit an affidavit is a secondary protection afforded claimants when a search warrant is sought subsequent to a subpoena. Although the Act does not specifically provide for an affidavit when a search warrant is sought in the first instance, the court finds that it defeats the purpose of the Act to deny a claimant the right to submit an affidavit when a government entity bypasses the primary protection provided by a subpoena. The defendants in this case failed to provide a subpoena as

required by the Act. In so doing, the defendants took away an important right given to the plaintiff by Congress. Defendants should not benefit from their failure to act. Thus, the court finds that, under the facts of this case, plaintiff should have been allowed the opportunity to submit an affidavit in opposition to the issuance of a search warrant.

### C. Applicability of the Act to these Defendants

#### 1. Sovereign Immunity

Defendant members of the Board and defendant Parker assert that sovereign immunity prohibits this lawsuit against them in their official capacity. Defendants claim that this lawsuit in reality is a suit against the state, which has not waived its sovereign immunity. Thus, defendants contend that dismissal is appropriate.

 The court agrees that defendant Parker is an officer of the State of Missouri and the City of Kansas City, Missouri, pursuant to Mo.Rev.Stat. § 84.710 (1994). Furthermore, defendants who are members of the Board of Police Commissioners are state officers and members of a state agency. *State ex rel. Sayad v. Zych,* 642 S.W.2d 907 (Mo.1982) (en banc). It is well established that a suit against an official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Accordingly, this lawsuit against defendant members of the Board and defendant Parker in their official capacity is a suit against the state of Missouri. Thus, it would appear that sovereign immunity prohibits this lawsuit against the members of the Board of Police Commissioners and Parker in their official capacity.

 Defendant McCaskill has stated that she is not a state officer, but, rather is a charter officer of Jackson County, Missouri. Thus, a suit against McCaskill in her official capacity is a suit against the county of Jackson County. The Privacy Protection Act provides for a cause of action against a governmental unit which is defined by the Act as including any unit of state government. Thus, it appears that plaintiff's claim under the Privacy Protection Act against defendant McCaskill is allowed by the Act.

 With respect to defendant members of the Board and Parker, plaintiff asserts that defendants' appearance in court, litigating this matter on the merits without standing on any immunity claims, constituted a waiver of sovereign immunity and thus, this cause of action may be maintained. The court notes, however, that defendants raised the defense of sovereign immunity in their answer to the complaint. Thus, defendants did raise this defense before appearing in court. Moreover, the court does not construe a waiver from defendants' appearance in court. Although some courts have inferred a waiver of sovereign immunity when the state has made a general appearance in federal court and defended a lawsuit on the merits, these cases are distinguishable from the instant case.[1]

Accordingly, the court finds that state of Missouri has not waived its sovereign immunity. Consequently, this cause of action for violation of the Privacy Protection Act cannot proceed against defendant members of the Board and defendant Parker in their official capacities. Plaintiff has moved to amend the complaint to include a cause of action against defendant Parker in his individual capacity. The court provisionally denied this motion which was filed after defendants submitted

---

1. In one such case, waiver was recognized because the state's appearance in court constituted a waiver of sovereign immunity under state law. *Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 556 n. 2, 42 L.Ed.2d 532 (1975). In another case, a government corporation not only appeared in court but also filed a counterclaim and a third-party complaint. *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.,* 744 F.2d 880, 886 (1st Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985). Additionally, in a case decided in this circuit, the court found a limited waiver by the state as to judgment where a state voluntarily agreed to pay a judgment against its official sued in his individual capacity. *Hankins v. Finnel,* 964 F.2d 853 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). None of the circumstances which led the courts, in the aforementioned cases, to find a waiver of sovereign immunity, are present in the instant case.

**1292**

their briefs. The court denied the amendment because defendants had not had an opportunity to present evidence or make arguments regarding this claim. Upon finding that plaintiff's claims against the members of the Board and defendant Parker in his official capacity cannot proceed, the court will allow plaintiff to amend its complaint to include a claim against defendant Parker in his individual capacity. Plaintiff's claim against the Board of Police Commissioners, through the individual members of the Board, however, is dismissed.

**2. Prosecutorial and Qualified Immunity**

██ Defendant McCaskill claims that she is protected from this lawsuit by prosecutorial immunity. Defendant additionally argues that if the court authorizes a lawsuit against her in her personal capacity, she is entitled to qualified immunity.

The Privacy Protection Act states that in a cause of action against a government entity, the government may not rely upon the immunity of the officer for whom a violation is asserted. 42 U.S.C. § 2000aa–6(c). The court has previously found that this lawsuit against defendant McCaskill in her official capacity is a suit against the county of Jackson County, Missouri. Therefore, under the Privacy Protection Act, McCaskill's prosecutorial immunity and/or qualified immunity is not permitted as a defense.

**D. Whether the Act was Violated**

██ Having found that the Act is applicable to facts of this case and to defendant McCaskill in her official capacity and that no exceptions to the Act apply, the court now reaches the issue of whether defendant McCaskill violated the Privacy Protection Act. The court has previously recognized that the relevant provision of the Act on which plaintiff bases its claim states "it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense to search for or seize documentary materials ... possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa(b). The court finds that the search

and seizure in this case constitutes a violation of this provision. Consequently, plaintiff is entitled to damages pursuant to section 2000aa–6(f) of the Act. Because plaintiff has not stated that it suffered any actual damages, the Act provides that the plaintiff is entitled to recover liquidated damages of $1000.

**III. APPLICABILITY OF SECTION 1983**

Plaintiff has also brought a claim against defendants under 42 U.S.C. § 1983 for violation of its constitutional rights. Defendants also challenge the appropriateness of this remedy.

**A. Whether Precluded by Privacy Protection Act**

██ Defendants argue that plaintiff's cause of action under section 1983 is barred. Defendants note that a cause of action under section 1983 is barred when Congress replaces it with an alternative remedy. *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). Defendants argue that Congress intended the Privacy Protection Act to be an exclusive remedy through terms set forth in section 2000aa–6(d). The court has previously interpreted this provision of the Act as establishing that a remedy against a government entity is exclusive as to any additional recovery under the Act from an employee or officer. The court is also guided by the Supreme Court's statement that it will "not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy." *Smith,* 468 U.S. at 1012, 104 S.Ct. at 3468. Therefore, the court does not find that the Act provides an exclusive remedy for plaintiff's claim that precludes an alternative or additional cause of action under section 1983.

**B. Plaintiff's First Amendment Rights**

██ Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of a claimant. Plaintiff alleges that under the First Amendment, it possessed a "reporter's privilege." Plaintiff claims that this reporter's privilege insures that before

news related materials are seized by compulsory process, it is entitled to be heard by a court of law. Defendants contend that plaintiff has no basis for its constitutional claim and, thus, its section 1983 claim is invalid.

In support of its constitutional claim, plaintiff relies on the decision in *Continental Cablevision v. Storer Broadcasting*, 583 F.Supp. 427 (E.D.Mo.1984), which held:

> [N]ews reporters enjoy a qualified privilege, derived from the first amendment guarantee of a free press, to withhold from discovery in a civil case confidential or non-confidential sources, material, or other information where discovery would impinge on the ability of the media to gather and disseminate news.

*Id.* at 435. Plaintiff construes this holding as giving it a constitutional right to a hearing.

The holding in *Continental Cablevision* is limited to discovery in a civil case. This case involved the seizure of material in a criminal investigation. Moreover, *Continental Cablevision* dealt with a reporter's right to withhold the identity of confidential sources, which is not an issue in the instant case. Despite *Continental Cablevision's* extension of the reporter's privilege to "materials", the focus of this privilege is to prevent infringement on the media's ability to "gather and disseminate news." Plaintiff's ability to gather and disseminate news was not hindered in this case, as defendants seized the videotape after plaintiff's news broadcast. Moreover, the possibility of seizure without a hearing does not infringe on the ability to "gather and disseminate news" as does the possibility that confidential sources may be revealed through discovery. Thus, the court refuses to extend the holding in *Continental Cablevision* into a reporter's First Amendment right to a hearing before seizure of material pursuant to a criminal investigation. Consequently, the court finds no support for plaintiff's claim that is was entitled to a hearing based on a "reporter's privilege." As a result, plaintiff's claim based on section 1983 is denied.

Accordingly, it is **ORDERED** that:

(1) defendants shall return to the plaintiff the original videotape seized on August 5, 1994;

(2) Count I of plaintiff's complaint against the members of the Board of Police Commissioners for violation of the Privacy Protection Act is dismissed;

(3) Count I of plaintiff's complaint against defendant Parker in his official capacity for violation of the Privacy Protection Act is dismissed;

(4) plaintiff shall amend its complaint to bring a claim under the Privacy Protection Act against defendant Parker in his individual capacity within twelve (12) days from the date of this Order;

(5) judgment shall be entered in favor of plaintiff on Count I of plaintiff's complaint against defendant McCaskill, in her official capacity, for violation of the Privacy Protection Act and liquidated damages are assessed in the amount of $1000;

(6) Count II of plaintiff's complaint, alleging a violation of 42 U.S.C. § 1983 is dismissed against all defendants.