STATE of Missouri ex rel. Wayne
KILLINGSWORTH, et al.,
Respondents,

v.

Sherman GEORGE, Appellant.

No. ED 85262.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 31, 2005.

Application for Transfer to Supreme Court
Denied July 28, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Donald L. Wolff, Clayton, MO, for appellant.

Jerome A. Diekemper, Janine M. Martin, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

City of St. Louis Fire Chief Sherman George appeals the judgment granting the petition of Relators Wayne Killingsworth, John Fischer, James Willie, Gail Simmons, Russ Richter, Daniel Fog (collectively "Eligible Candidates") and the St. Louis Firefighters Association Local 73 for a writ of mandamus compelling him to make appointments under the Civil Service Rules of the City of St. Louis ("City"). We reverse.

In early 2004, the City's Department of Personnel administered competitive promotional examinations for the positions of fire captain and battalion fire chief in the City's Fire Department. Based on the examination results, the Department of Personnel prepared a ranked list of candidates for promotion to the positions. The Eligible Candidates successfully completed the examination process for promotion and were placed on the pertinent promotion list for one of the positions.

In July 2004, Chief George, as the appointing authority for positions within the City's Fire Department, submitted a request for certification to the Director of Personnel to fill two vacancies in the position of battalion fire chief and eight vacancies in the position of fire captain. The Department of Personnel filled the request and sent Chief George certified lists of eligible candidates for the job vacancies. The same day, the Department of Personnel sent letters to the Eligible Candidates alerting them to the imminent promotions. The Director of Personnel later extended the time period for appointing candidates from the certified list for an extra thirty days beyond its expiration date of August 2, 2004, as authorized by Civil Service Rule

VII, Section 4. Thus, the certified list was in effect until September 1, 2004.

As of September 1, 2004, Chief George had not made any selections from the certified list. Relators filed a petition in mandamus requesting a permanent writ directing Chief George to make appointments from the certified list in effect on September 1, 2004. The trial court granted Relators' petition. This appeal follows.

■ In his sole point on appeal, Chief George argues that the trial court erred by issuing a writ of mandamus because, as appointing authority, he has discretionary power under the Civil Service Rules ("Rules") to appoint and promote or not to appoint and not promote from the lists of eligible candidates provided by the Department of Personnel. He further contends that because the power to appoint and promote is discretionary, the trial court's grant of a writ of mandamus was improper.

■ The grant or refusal of a writ of mandamus is reviewed under an abuse of discretion standard. *Jones v. Carnahan*, 965 S.W.2d 209, 213 (Mo.App.1998). A court may issue the extraordinary relief of mandamus to compel the performance of a ministerial duty but not to compel the performance of a discretionary duty. *Id.* at 212–13. A ministerial act is an act that the law directs the official to perform upon a given set of facts, independent of what the officer may think of the propriety or impropriety of doing the act in a particular case. *Id.* at 213. A discretionary act is one requiring the exercise of reason in determining how or whether the act should be done. *Id.*

■ A court may issue mandamus only where there is an unequivocal showing that the public official failed to perform a ministerial duty imposed by law. *Id.* The applicant for relief must prove that he has a clear, unequivocal, specific and positive right to have performed the act demanded, and the remedy will not lie if the right is doubtful. *Id.* To determine whether the right to mandamus is clearly established and presently existing, we examine the statute under which the relator claims a right. *Id.* If the statute involves a determination of facts or a combination of law and facts, a discretionary act rather than a ministerial act is involved, and this discretion cannot be coerced by the courts. *Id.*

■ In determining the meaning of a city ordinance, courts apply the same rules that are used in construing a state statute. *Matthews v. City of Jennings*, 978 S.W.2d 12, 15 (Mo.App.1998). We generally seek to ascertain the intention of the lawmakers by giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results. *State ex rel. Jackson County v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975). Further, in ascertaining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. *Id.*

Article XVIII of the St. Louis City Charter ("Charter") governs appointments and promotions to classified service. The stated purpose of Article XVIII is as follows:

[T]o provide a modern and comprehensive system of personnel administration for the [C]ity, whereby economy and effectiveness in the personal services rendered to the [C]ity, and fairness and equity to the employees and the taxpayers of the [C]ity, alike, may be promoted. To accomplish this end the provisions of this article shall be liberally construed....

Charter, Article XVIII, Section 2. To accomplish the Charter's purpose, among other principles and policies, Section 2(a) of the Charter requires the City to apply the following principle and policy:

> Merit and fitness. All appointments and promotions to positions in the service of the [C]ity and all measures for the control and regulation of employment in such positions, and separation therefrom, shall be on the sole basis of merit and fitness, which, so far as practicable, shall be ascertained by means of competitive tests, or service ratings, or both.

*Id.* The Charter sets forth specific provisions for the testing and promotion process, including competitive examinations, certification and appointment of eligible candidates, filling vacancies, and promotions. *Id.* at section 3(c)-(e). The Charter delegates to the Director of Personnel the duty and power to hold examinations, to pass upon the qualifications of applicants, to establish eligible lists as needed, and to certify names of eligible candidates to appointing authorities for filling vacancies in competitive positions. *Id.* at section 9(g). The appointing authority is defined as any person or group of persons having power by law or ordinance, or by lawfully delegated authority, to make appointments to any position in the City service. *Id.* at section 1(a).

The Rules describe the specific procedures that City officials, including the Director of Personnel and the appointing authority, must follow to achieve the Charter's purpose. In particular, Rule VI explains in detail the procedures the Director of Personnel must follow to properly examine applicants for positions or promotions as City employees. Rule VI, Section 15(d), of the Rules provides that after each promotional examination, the Director of Personnel shall prepare and keep available a promotional employment list of persons successfully passing the examination, arranged in order of final weighted ratings received. When an appointing authority desires to fill a vacancy, Rule VII, Section 2, directs the appointing authority to notify the Director of Personnel. In response to the appointing authority's request, Rule VII, Section 2, requires the Director of Personnel to determine who may be available for appointment and establish a list of eligible candidates. After establishing a list of eligible candidates, under Rule VII, Section 3, the Director of Personnel shall certify to the appointing authority the names of the highest ranking available candidates. Finally, Rule VII, Section 4, explains what action follows an appointing authority's receipt of a certified list of eligible candidates. It states in relevant part:

> The appointing authority or his designee shall interview each available eligible who is certified. Within twenty-one (21) days after such names are certified, the appointing authority shall appoint one of those whose names are certified to each vacancy he or she is to fill. In the event that an appointment is not made to the position within twenty-one (21) days after such names are certified, or the appointing authority is unable to make a selection, the Director of Personnel may grant an extension of a maximum of an additional thirty (30) days. If no selection is made within the prescribed or authorized period, the certification shall be null and void. Appointing authorities shall make each selection from the top three eligibles available and willing to accept appointment, except, 1.) any eligible who has had three considerations for appointment from the same certification may be considered removed from further consideration if the appointing authority so desires as if their names were removed from the certification, or 2.)

their names are removed from the eligible list during the effective period of the certification in accordance with Civil Service Rule VI, Section 18. . . .

Rule VII, Section 4.

Chief George contends that his duty to appoint is not ministerial because Rule VII, Section 4, renders a certified list null and void after a period of no more than fifty-one days. Because he can, consistent with the Rule, wait until the expiration of the appointment period and allow the list to become null and void, Chief George reasons that he has the discretion to choose not to appoint any eligible candidates. We agree.

By its express terms, Rule VII, Section 4, directs that any vacancies that are filled must be filled by one of those certified as eligible. However, nothing in Rule VII, Section 4, requires the appointing authority to fill any particular position. The discretion to fill or not to fill any particular position remains vested in the appointing authority. By providing that the list becomes null and void if no selection is made within the authorized period, the Rule clearly contemplates that there will be situations in which the appointing authority will choose, for budgetary, management or other reasons, not to fill a given position. In that event, the position simply remains vacant. To fill the position, the appointing authority must re-institute the process by requesting a new list.

■ Contrary to the trial court's conclusion, this construction of Rule VII, Section 4 does not frustrate the intent of the Rules. It promotes economy and effectiveness in the personnel services rendered to the City by allowing appointing authorities to decide whether filling available positions would be in the best interest of the department and the City. It also preserves equity and fairness to employees by assuring that any vacancies that are filled are based on merit and fitness for the positions. More importantly, any other construction would be contrary to the principles of statutory construction because it would render meaningless the provisions with respect to what is to occur if the appointing authority decides not to fill a position within the specified time. It is presumed that every word, clause, sentence and provision of a statute have effect and that idle verbiage or superfluous language was not inserted into a statute. *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo.App.2000).

For the foregoing reasons, we hold that Rule VII, Section 4, of the City's Civil Service Rules give Chief George the discretion not to fill any particular positions in the department and that mandamus will not lie. Accordingly, we reverse the judgment and quash the writ of mandamus.

LAWRENCE E. MOONEY, C.J., and MARY K. HOFF, J., concur.