Thomas **NESKE**, et al., Respondents,

v.

**CITY OF ST. LOUIS**, et al., Appellants.

**Firemen's Retirement System, et al., Respondents,**

v.

**City of St. Louis, et al., Appellants.**

Nos. SC 87976, SC 87977.

Supreme Court of Missouri, En Banc.

March 13, 2007.

Rehearing Denied May 1, 2007.

---

Jay A. Summerville, Jeffery T. McPherson, Deanna M. Wendler Modde, Armstrong Teasdale, LLP, St. Louis, for Ap-

pellants in cause nos. SC 87976 & SC 87977.

James C. Owen, Katherine S. Walsh, Chesterville, for Respondents in cause no. SC 87976.

Daniel G. Tobben, David R. Bohm, Jeffrey R. Schmitt, St. Louis, for Respondents in cause no. SC 87977.

MARY R. RUSSELL, Judge.

The City of St. Louis [1] appeals the trial court's determination that it was required to pay the entire amount certified by the City's Police Retirement System ("PRS") and its Firemen's Retirement System ("FRS") in past fiscal years. The trial court's decision is affirmed, as there is no Hancock Amendment violation in that there is no new or increased activity required of the City, there is no conflict with Mo. Const. art. VI, section 26(a), and the City is required to pay the entire amount certified.

## Background

The PRS and the FRS are created and governed by statute.[2] The PRS and the FRS are administered by separate boards of trustees. The boards of trustees hire an actuary to conduct a valuation of the retirement systems' assets and to calculate the City's contributions. On the basis of the actuarial evaluation, the boards of trustees submit the contribution amounts to the City's Board of Estimate and Apportionment ("E & A"). E & A is tasked

with reviewing and revising the City's yearly proposed budget and with submitting the budget for the approval of the City's Board of Aldermen. Section 5.14.030, City Code. This litigation arose after E & A failed to approve the full contribution amount that the PRS and the FRS trustees certified as the City's payment. This opinion jointly addresses the City's appeals in both the PRS the FRS cases because the issues are similar.

## Facts Relating to the PRS

The PRS trustees certified to E & A that the City's payable amount for fiscal year 2003–2004 was $9,575,892. E & A's proposed budget allocated $4,115,600 as the City's contribution to the PRS, and that amount was adopted by the Board of Aldermen.

The PRS trustees then sued the City, seeking declaratory and injunctive relief and damages, alleging that the City was required by section 86.344 to pay the amount certified.[3] The parties all moved for summary judgment. The trial court found in the PRS's favor, holding that the City was required to pay the entire amount certified. It also concluded that the City lacked standing to assert its Hancock Amendment argument, and rejected its other arguments. The City appeals.

## Facts Relating to the FRS

The FRS trustees certified to E & A that the City's payable amount for fiscal

1. The City and the other defendants are collectively referred to in this opinion as "the City."

2. The statutes relating to the PRS are sections 86.200 to 86.366, RSMo 2000 (and, where amended, RSMo Supp.2006). Sections 87.120 to 87.370, RSMo 2000 (and, where amended, RSMo Supp.2006), are relevant to the FRS, and pursuant to the enabling authority of these sections, the FRS is governed by Chapter 4.18, Revised Code of the City of St.

Louis (hereinafter "City Code"). Statutory references in this opinion are to RSMo 2000, except where otherwise indicated.

3. Members of the PRS trustees also sued the City individually, alleging that the appropriation amount impaired the obligation of their contracts of employment. The court found in the City's favor on this claim, and this issue is not on appeal.

year 2003–2004 was $8,913,102, and for fiscal year 2004–2005 was $13,765,477. E & A's proposed budget for fiscal year 2003–2004 allocated $1,884,356 as the City's contribution to the FRS and $193,799 as the City Airport Commission's contribution to the FRS. Those amounts were adopted by the Board of Aldermen. E & A's proposed budget for fiscal year 2004–2005 allocated $1,862,061 as the City's contribution to the FRS, and that amount was adopted by the Board of Aldermen.

The FRS and individual members of the FRS trustees then sued the City, seeking declaratory and injunctive relief and damages, alleging that the City was required by section 87.355 and Chapter 4.18, City Code to pay the amount certified. The parties all moved for summary judgment. The trial court found in the FRS's favor, finding that the City was required to pay the entire amount certified. The court rejected the City's contention that the FRS's claims were barred by the Hancock Amendment. The court found that the City waived its ability to raise the Hancock Amendment by not pleading it as an affirmative defense and because it lacked standing to assert a challenge based on the Hancock Amendment. The City appeals.

## Jurisdiction

These cases were transferred to this Court by the court of appeals pursuant to Rule 83.02, as the cases present issues of general interest and importance. This Court has jurisdiction pursuant to Mo. Const. art. V, section 10.

## Standards of Review

■ Appellate review of summary judgment is *de novo,* and the decision may be affirmed on different grounds than those relied on by the trial court. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 387–88 (Mo. banc 1993).

■ In general, constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent character. *StopAquila.org v. City of Peculiar,* 208 S.W.3d 895, 899 (Mo. banc 2006). This Court is required to give due regard to the primary objectives of the constitutional provision under scrutiny, as viewed in harmony with all related provisions. *State ex rel. Upchurch v. Blunt,* 810 S.W.2d 515, 516 (Mo. banc 1991).

## Hancock Amendment Claims

■ The City argues that the trial court erred in entering judgment in favor of the PRS and the FRS because requiring the City to pay the entire amounts certified violates Missouri's Hancock Amendment.[4]

In relevant part, the Hancock Amendment states:

> The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties or other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the [G]eneral [A]ssembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

Mo. Const. art. X, section 21.

■ Mo. Const. art. X, section 21 prevents the State from requiring local gov-

---

4. Mo. Const. art. X, sections 16 to 24.

ernments to begin a new mandated activity, or to increase the level of a previously mandated activity beyond its 1980–1981 level, without appropriation of sufficient state monies to finance the costs of the new or increased activity. *Fort Zumwalt Sch. Dist. v. State,* 896 S.W.2d 918, 921 (Mo. banc 1995). This portion of the Hancock Amendment is violated if both (1) the State requires a new or increased activity or service of a political subdivision and (2) the political subdivision experiences increased costs in performing that activity or service without funding from the State. *Miller v. Dir. of Revenue,* 719 S.W.2d 787, 788–89 (Mo. banc 1986).

The City argues that the Hancock Amendment is violated if the City is required to pay the entire amounts certified by the PRS and the FRS for the years at issue because those amounts exceed the amount the City paid in 1981.[5] This argument fails because despite the fact that the dollar amounts certified for the City to contribute to the PRS and the FRS are greater than the dollar amounts certified for the 1980–1981 fiscal year, the City's requirements to pay are unchanged—the City is still required to pay the entire amounts certified by the PRS and the FRS boards of trustees. There is no new or increased activity.

■ The Hancock Amendment is aimed at limiting taxes by controlling and limiting governmental revenue and expenditure increases. *See Boone County Court v. State of Mo.,* 631 S.W.2d 321, 325 (Mo. banc 1982).[6] The amendment's official ballot title stated that it prohibited "state expansion of local responsibility without state funding." *Id.* The increased cost of funding the PRS and the FRS is not an expansion of the City's long-existing responsibility.

The City has been required to fund the PRS and the FRS pursuant to an actuarial formula that has not changed since Hancock's adoption in 1981. The City does not challenge the actuarial formula used to calculate the City's payments. Inevitably, the amount required by the formula fluctuates, yielding varying dollar figures at any given actuarial assessment as more police and firemen are employed, as more retire, as wages are altered, and as a function of inflation. Hancock's mission to control taxes is not thwarted if the actuarial formula yields increased certified amounts payable to the PRS and the FRS. The change in the certified amount derived from the actuarial calculations is not the measure of whether Hancock is violated. The question is whether the City has been mandated to bear new responsibilities in relation to this activity. It has not.

The City argues that *State ex rel. Sayad v. Zych,* 642 S.W.2d 907,[7] controls the PRS

---

**5.** Specifically, the City alleges that payment to the PRS of $9,575,892 for 2003–2004 would violate Hancock because the funding level for the PRS in 1981 was $5,886,755. It alleges that payments to the FRS of $8,913,102 for 2003–2004 and $13,765,477 for 2004–2005 would violate Hancock because the funding level for the FRS in 1981 was $8,713,700.

**6.** In *Boone County* this Court found that the state statute mandating a $100 salary increase for county collectors was "an increase in the level of any activity" such that it violated Hancock unless the state funded the in-

creased costs to the counties. 631 S.W.2d at 325.

**7.** In *Zych,* this Court was asked to determine if the Hancock Amendment was violated where the St. Louis Board of Police Commissioners sought payment by the City for a certified budget amount for 1982–1983 that was greater than the amount certified in 1980–1981. 642 S.W.2d at 908–09. The City argued that the Police Board, as a state agency, could not compel the City to appropriate an amount of money above the amount appropriated by the City for use by the Police Board as of the effective date of the Hancock

and the FRS cases. *Zych* is distinguishable insofar as the arguments in *Zych* focused on the actual dollar amount appropriated in 1980–1981.[8] In the PRS and the FRS cases, the focus is not on whether the dollar amounts requested of the City have increased, but rather on whether there has been any alteration to the long-used actuarial formula that produces the dollar amounts at issue.

■ Where there is no mandate that the City take on a new responsibility, but only a continued responsibility for it to fund an existing activity according to a previously-existing formula, there is no Hancock violation. *See State ex rel. Pub. Defender Comm'n v. County Court of Greene County*, 667 S.W.2d 409, 414 (Mo. banc 1984) (finding there was no new or increased activity in violation of Hancock where the county's existing statutory obligation was not changed by the challenged action).

### No Conflict with Mo. Const. art. VI, section 26(a)

■ The City also argues that it should not be required to pay the entire amounts certified for the years at issue to the PRS and the FRS because paying those amounts would violate Mo. Const. art. VI, section 26(a)[9] by forcing the City to become indebted beyond its income. The City contends that paying the amounts certified cannot be done without exceeding

its revenues because it has already appropriated and transferred the funds for the fiscal years at issue. The City supports its argument by suggesting that a requirement that it pay the entire amount certified has the possibility of impairing or wholly destroying the City's other budgetary obligations.

The City cites *State ex rel. Field v. Smith*, 329 Mo. 1019, 49 S.W.2d 74 (banc 1932), for the proposition that a statute that gives a City board unlimited power to determine the City's appropriations is void as an improper delegation of the legislative power to tax. The concerns at issue in *Field* are inapplicable to the PRS and the FRS. The PRS and the FRS boards of trustees do not have unlimited discretion in determining the amount requested by the City, but rather request and certify the amount that an actuary determines is required for the systems to remain actuarially sound. As previously noted, the City does not challenge the actuarial calculations in these cases.

The City essentially argues that it can evade payment of the amounts certified by refusing to appropriate the money owed during the fiscal year when it is due. This argument fails. The City did not show that it lacked sufficient income in the years at issue with which to pay the amounts certified to the PRS and the FRS. Its

---

Amendment. *Id.* at 909. The Court concluded that as a state agency, the Police Board could not require the City to increase its level of activity in relation to the Police Board beyond its 1980–1981 amount. *Id.* at 911.

**8.** The majority in *Zych* opined:

The level of the City's activity in relation to the Police Board required by existing law upon the adoption of article X, section 21, was the amount certified by the Police Board for the fiscal year 1980–81. .... It would be unconstitutional for the Police Board to require the City to appropriate

any more than $66,634,713, the budget certified as of the effective date of the Hancock Amendment.
642 S.W.2d at 911.

**9.** Mo. Const. art. VI, section 26(a) states:

No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

payment of the entire amount certified would have necessitated making different choices with its budget, but such choices are necessary when dictated by statute. The City cannot evade its responsibilities to the PRS and the FRS by refusing to pay them the amounts required and then arguing it has spent the monies elsewhere.

Payment of the amount certified by the PRS and the FRS boards of trustees does not violate Mo. Const. art. VI, section 26(a).

### The City Must Pay the Entire Amount Certified

■ The City contends that it is not required to pay the full amounts certified by the PRS and the FRS because its lesser payments were adequate as a matter of law in that they provide enough money to cover the benefits owed.

The City states that section 86.344 does not mandate that it pay the entire amount certified by the PRS because section 86.337 provides that, notwithstanding the certified amount, the City's payment is sufficient if, when combined with the retirement system's assets, there is enough money to provide benefits payable during the current year.

Similarly, the City argues that section 87.355 and section 4.18.320, City Code do not require that it pay the entire amount certified for the FRS because sections 87.340 and section 4.18.305, City Code indicate that the payment is sufficient if, when combined with the retirement systems assets, there is enough money to provide benefits payable during the current year.

■ The primary rule of statutory construction is to determine the legislature's intent by considering the plain and ordinary meaning of the words used in the statute and by giving each word, clause, sentence, and section of the statute mean-

ing. *State ex rel. Womack v. Rolf,* 173 S.W.3d 634, 638 (Mo. banc 2005). In ascertaining the meaning of a city ordinance, the same statutory construction rules are applied. *State ex. rel. Killingsworth v. George,* 168 S.W.3d 621, 623 (Mo.App. 2005). The legislature's intent is also determined by considering the whole act and its purposes and by seeking to avoid unjust or absurd results. *Id.* In determining the meaning of a particular statute, this Court may look to the established policy of the legislature as disclosed by a general course of legislation. *Id.* All consistent statutes relating to the same subject are construed together as though constituting one act, and "[t]he rule of construction in such instances proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions." *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991).

Section 86.344 (applying to the PRS) provides:

> On or before the first day of March of each year the board of trustees shall certify to the board of estimate and apportionment of the city the amounts which will become due and payable during the year next following for expenses pursuant to subsection 2 of section 86.343 and the cost of benefits as determined pursuant to section 86.337. The amounts so certified shall be appropriated by the city and transferred to the retirement system in equal payments in the first six months of the ensuing year.

Section 86.337 (applying to the PRS) provides:

> The total amount payable to the retirement system for each fiscal year shall be not less than the normal contribution rate of the total compensation earnable by all members during the year; provided, however, that the aggregate payment by the said cities shall be sufficient

when combined with the assets of the retirement system to provide the pensions and other benefits payable during the then current year.[10]

Section 87.355 [11] (applying to the FRS) provides:

On or before the first of March of each year the board of trustees shall certify to the proper city authorities the amount which will become due and payable during the year next following to the general reserve fund. The amount so certified shall be included by the city authorities in their annual budget estimate. The amount so certified shall be appropriated by the city and transferred to the retirement system for the ensuing year.

Section 87.340 [12] (applying to the FRS) provides:

The total amount payable in each year to the general reserve fund shall be not less than the sum of the rates percent known as the normal contribution rate and the accrued liability contribution rate of the total compensation earnable by all members during the year, and the

aggregate payment by the city shall be sufficient when combined with the amount in the fund to provide the retirement allowances and other benefits payable out of the fund during the then current year. The city may contribute at any time from bond issue or other available funds an amount equal to the unfunded accrued liability as certified by the actuary in which event no further accrued liability contribution will be required or may contribute any lesser amount which will be used to proportionately reduce future accrued liability contributions.

 The City argues that the amounts certified need not be paid because the use of the word "shall" in these provisions is not intended to make the contribution amount mandatory. This Court disagrees. Generally the use of the word "shall" connotes a mandatory duty. *Bauer v. Transitional Sch. Dist. of the City of St. Louis*, 111 S.W.3d 405, 408 (Mo. banc 2003). Whether the use of the word "shall" in a statute is mandatory or directory is primarily a function of context and legislative intent. *Id.*

---

**10.** Prior to an amendment in 2000, this section read:

The total amount payable in each year to the general reserve fund shall be not less than the sum of the rates percent known as the normal contribution rate and the accrued liability contribution rate of the total compensation earnable by all members during the year; provided, however, that the aggregate payment by the said cities shall be sufficient when combined with the amount in the fund to provide the pensions and other benefits payable out of the fund during the then current year. The city may contribute at any time from bond issue or other available funds an amount equal to the unfunded accrued liability as certified by the actuary in which event no further accrued liability contribution will be required or any lesser amount which will be used to proportionately reduce future accrued liability contributions.

Section 86.337, RSMo 1994.

**11.** City Code section 4.18.320 precisely tracks the language of sections 87.355.

**12.** City Code section 4.18.305 precisely tracks the language of section 87.340. Further, City Code section 4.18.290 provides:

Contributions to and payments from the general reserve fund shall be as follows: On account of each member there shall be paid annually into the fund by the City an amount equal to a certain percentage of the earnable compensation of the member to be known as "the normal contribution" and an additional amount equal to a percentage of his earnable compensation to be known as "the accrued liability contribution." The [percentage rates] of the contributions shall be fixed on the basis of the liability of the Retirement System as shown by actuarial valuations.

The statutes and ordinances relating to the PRS and the FRS, when taken as a whole, support the view that actuarial soundness is the principle at the heart of the PRS and the FRS funding provisions. Actuarial soundness requires the City to make its annual contribution of the actuarially-determined amounts certified by the PRS and the FRS boards of trustees.

Additionally, the City's proposed construction of the statutes fails to account for the principle that one part of a statute or ordinance should not be read in isolation, but rather in the context of the whole act, and should be read to harmonize all provisions and give effect to every word, sentence, and clause of the legislation, if reasonably possible. This Court construes the opening clauses in sections 86.337 and 87.340 to set forth the minimum amount payable to the PRS and the FRS. The second clauses—stating that the City's payments are sufficient if they provide the payable benefits when combined with the monies in the retirement funds—are intended to modify the first part of the sentence. The second clauses establish that the City is required to contribute more than the minimum amount ordinarily payable whenever the amounts certified, when combined with the assets in the systems' reserves, are insufficient to cover the pension and other benefits payable during the current year.

The City must pay the entire amount certified by the PRS and the FRS.

## Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

All concur.