SUNSWEPT PROPERTIES, LLC, Country Aire Manor, LLC, and IPX Development 81, LLC, Respondents,

v.

NORTHEAST PUBLIC SEWER DISTRICT, Appellant,

and

Jeffrey S. Doss, James Huber, Leroy Luck, Michael Thuston, Robert Conley, and Lauren Monge, Defendants.

No. ED 92290.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 10, 2009.

Robert K. Sweeney, Hillsboro, MO, for Appellants.

William M. Corrigan, Jr., Jeffrey T. McPherson, Armstrong Teasdale LLP, St. Louis, MO, for Respondents.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Northeast Public Sewer District (the District),[1] along with its Executive Director, Jeffrey Doss (Doss) and Board of Trustees (the Board), (collectively, Appellants) appeal from the trial court's judgment directing the District to allow Sunswept Properties, L.L.C. (Sunswept) to connect its apartment community to the District's sewer facilities while only requiring a connection fee for the new units resulting from the development and granting declaratory judgment allowing the collection of a connection fee by the District only for new units resulting from the development of several apartment communities.[2] We affirm.

### Background

The facts of this case are largely undisputed. In 1976, the Saline Sewer Company (the District's predecessor in interest) entered into an agreement (the 1976 Agreement) with the prior owners of both the Three Oaks Mobile Home Park and Sunswept Mobile Home Park. Pursuant to the 1976 Agreement, the District agreed to provide sewer service to the premises, and the owners were required to pay a connection fee for the 355 mobile homes located on the premises at the rate of $325 per mobile home. This agreement stated there would be no additional connection fee or service charge for service buildings such as offices or laundry facilities used by the mobile home occupants, or for the existing duplex and rental house on the Sunswept premises. The 1976 Agreement covered "the treatment of sewage wastes on the aforesaid land as such land may be used by individual owners, occupants, renters," but did "not cover or include the treatment of sewage wastes arising from future commercial areas, swimming pools

---

1. The District is a political subdivision of the State of Missouri created pursuant to Chapter 204 of the Missouri Revised Statutes and is situated in Jefferson County.

2. Also included as plaintiffs in the action below were Country Aire Manor, L.L.C. (Country Aire Manor) and IPX Development 81, L.L.C. (IPX), owners of mobile home parks within the District's service area that are connected to and receive services from the District. Both plan to develop apartment communities on the sites of their mobile home parks.

or other facilities which may be constructed on the aforesaid Land by Owner." The 1976 Agreement also required the mobile home park owners to transfer ownership of an existing treatment plant, fence, a storage building, existing sewer lines, and other improvements to the Saline Sewer Company and to grant necessary easements and access.

Walden Pond Apartments, L.P. (Walden Pond) later purchased the 131–unit Three Oaks Mobile Home Park with the intent of redeveloping the mobile home park into a 238–unit apartment community. In 1999, Walden Pond entered into an agreement with the District (the Walden Pond Agreement) concerning the extension of the District sewage collection system to service the proposed apartment community. The Walden Pond Agreement provided that Walden Pond would pay the District, "in accordance with the Ordinances of the District," a connection fee for "238 apartments minus 131 equivalent apartments that were connected and have been removed from this property, or 107 equivalent apartments."[3] A letter from the District to Walden Pond indicated that the Board "agreed to provide a credit of 131 equivalent apartments as a result of the elimination of the mobile homes at the former Three Oaks Mobile Home Park."

The conflict between the current parties began when Sunswept, the owner and developer of a 323–unit apartment community on the site of the former 208–unit Sunswept Mobile Home Park, submitted sewer plans to the District in connection with its proposed apartment development. After receiving comment from the District, Sunswept made changes to its development plans, which the District then approved. Upon District approval, residential developers such as Sunswept fund the improvements, which are thereafter dedicated to the District.

Section 8.02 of the District's Ordinance 1 requires a $2500 connection fee be paid to the District for connection to the District's collection sewers for "all residential living units including single-family residences, duplex units, multiple residential structure units and mobile homes." Sunswept requested that the District allow Sunswept to connect its newly developed apartment community to the District's sewer facilities. Sunswept proposed to pay the District the required $2500 connection fee for the 115 additional residential units that would result from the development of the apartment community. Sunswept sought the same "credit" that was given by the District to Walden Pond for the elimination of the mobile homes that previously were connected to the District's sewer facilities.[4]

The District's Board scheduled a meeting for February 21, 2007. Prior to the Board's meeting, Doss provided the Board with his Executive Director's Report setting forth his recommendations on various issues. In his report Doss addressed Sunswept's request for a "credit" toward the connection fee for the mobile homes previously located on the site of the new apartment community. Doss acknowledged the Walden Pond Agreement and stated that "a previous board and director, by special agreement, afforded the Walden Pond Apartments a credit of the number of taps equal to the number of old mobile home pads for which the apartments took [their]

---

3. At the time of the Walden Pond Agreement, Section 8.02 of the District's Ordinance 1 provided for a connection charge of $1200 for "each dwelling unit of a multiple unit residential structure."

4. Joseph Leibold, a partner in Sunswept, was also a general partner for Walden Pond and was aware of the Walden Pond Agreement.

place." Doss stated that he was "of the opinion that that action was erroneous and should not be used as a basis for justifying its application in this instance." Doss recommended to the Board that they not grant Sunswept's request for a credit.

The official minutes of the Board's February meeting indicate that representatives of Sunswept were present and wished to "request the waiver of any connection fees in relation to [the redevelopment of the former Sunswept Mobile Home Park] or a waiver for the existing 208 connections previously used by mobile homes." The Board informed Sunswept that it had not had time to review Sunswept's request and "requested that they be given time to review and discuss with the District's Attorney as well as Executive Director Doss."

The Board convened its next meeting on March 21, 2007. The official minutes indicate that during the meeting the Board went into a closed executive session "for purposes of discussing advice of counsel, litigation and personnel issues." The minutes reflect that during the closed session a motion was made to deny the request to waive the tap-on fees for Sunswept Mobile Home Park Development. The minutes indicate that "[a]ll were in favor" of the motion. This decision to deny the requested waiver was conveyed to Sunswept in an April 24, 2007 letter.

On October 2, 2007, Sunswept, along with Country Aire Manor and IPX, (collectively, Plaintiffs) filed a Petition for Violation of the Missouri Sunshine Law, Writ of Mandamus, Declaratory Judgment, and Injunction (Petition) against Appellants. The Petition included three counts. Count I alleged a violation of the Missouri Sunshine Law stemming from the Board's vote to deny Sunswept's request in a closed session. Plaintiffs' second count requested a writ of mandamus be issued granting

Sunswept's request to connect its apartment community to the District's sewer facilities and requiring payment of connection fees only for the 115 new units resulting from Sunswept's development of the apartment community. In the Petition's final count, Plaintiffs requested a declaratory judgment and injunction ordering Appellants to allow Plaintiffs to connect their apartment communities to the District's sewer facilities while requiring a connection fee only for new units resulting from the development of the apartment communities.

A trial was held on Plaintiffs' Petition on September 8, 2008. Joseph Leibold, a partner in all three Plaintiffs' businesses and general partner for Walden Pond, and Jay Kniker, a civil engineer, testified on behalf of Plaintiffs. Doss testified on Appellants' behalf.

The trial court issued its Order, Judgment, Writ of Mandamus, and Injunction (Judgment) on September 25, 2008. The trial court found that Appellants violated the Missouri Sunshine Law, but held that Appellants' actions were not "knowingly" done. Finding that the Sunshine Law violation was unintentional and resulted from a lack of understanding by the Board, the trial court entered judgment in favor of Appellants on Count I. As to Count II's request for a writ of mandamus, the trial court found that:

> . . . under the District's rules and regulations and the 1976 agreement, [Appellants] have a duty to allow Sunswept to connect its apartment community to the District's sewer facilities upon payment of a connection fee for new units. Sunswept has a property interest in its right to connection for the 208 units at the site of the trailer park, which interest cannot be divested without just compensation and due process of law.

The trial court declared the District's vote denying Sunswept's connection request to be null and void, and directed the District "by mandamus to grant the request of [Sunswept] to connect its apartment community to the District's sewer facilities while requiring a connection fee only for the 115 new units that would result from the development of the apartment community." In addressing the final count, the trial court entered a declaratory judgment and injunction that "[Appellants] are required to allow [Plaintiffs] to connect their apartment communities to the District's sewer facilities while requiring a connection fee only for new units that would result from the development of the apartment communities."

Appellants filed a Motion for New Trial on October 23, 2008, alleging several errors by the trial court. After hearing Appellants' Motion for New Trial, the trial court issued an Amended Order, Judgment, Writ of Mandamus, and Injunction (Amended Judgment) on December 2, 2008. In the Amended Judgment, the trial court denied Appellants' Motion for New Trial and clarified its earlier Judgment, among other things, explaining, "In applying the District's rules, there is no basis for distinguishing between the current Sunswept development and the previous Walden Pond development." The trial court reasoned that the 1976 Agreement applied to both Walden Pond and Sunswept, and that the treatment of Walden Pond by the District was relevant to the interpretation of the District's ordinance as it relates to connection fees. The trial court again concluded that "the District, without payment of a connection fee, is obligated to allow [Plaintiffs] to connect residential units of any character that re-

place or substitute for existing residential units."

Appellants filed a Notice of Appeal on December 8, 2008. This appeal follows.

### Point on Appeal

Appellants' sole point on appeal is that the trial court erred by substituting its judgment for that of the Board in ordering the District to grant sewer connection "fee credits/waivers" for certain units of the Sunswept apartment community development.[5] For purposes of our discussion, we assume that Appellants are challenging both the trial court's declaratory judgment and injunction that Appellants were required to allow the Plaintiffs to connect their apartment communities to the District's sewer facilities while requiring a connection fee only for new units that would result from the apartment community development and the trial court's direction to grant the Sunswept's connection request while requiring a connection fee only for the 115 new units.

### Standard of Review

 We review the judgment in a declaratory judgment action under the same standard as used in court-tried cases, affirming the judgment unless there is no substantial evidence to sustain it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Maasen v. Shaw*, 133 S.W.3d 514, 518 (Mo.App. E.D.2004).

 "Mandamus is appropriate when seeking to require an official to perform a ministerial act." *Burnett v. Kansas City Sch. Bd.*, 237 S.W.3d 237, 238 (Mo.App. W.D.2007). We review the grant of a writ of mandamus for abuse of discretion. *Id.*

---

5. Appellants' point fails to comply with Rule 84.04(d)(1), in that the point fails to identify the challenged ruling or action and to explain why, in the context of the case, the legal reasons for Appellant's claim of reversible error support their claim.

Under the abuse of discretion standard, this court will reverse the trial court's ruling only if it is "so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." *Id.* (internal quotations omitted). This court will not find an abuse of discretion "if reasonable people might differ about the propriety of the trial court's decision." *Id.*

■ This Court reviews the correct interpretation of an ordinance *de novo* and applies the same rules that are used in interpreting a state statute. *City of Strafford v. Croxdale,* 272 S.W.3d 401, 404 (Mo. App. S.D.2008).

*Discussion*

## A. Propriety of Writ of Mandamus

■ Appellants argue the trial court erroneously applied and declared the law and rendered its judgment against the weight of the evidence because the trial court substituted its judgment for that of the District's Board and failed to give proper deference to the Board's interpretation of Section 8.02 of Ordinance 1. Importantly, we note that Appellants' argument is premised upon a belief that the Board, when acting to deny Sunswept's request for connection to the sewer system, engaged in a legislative act relegated solely to the determination of the legislative body.

■ Appellants first argue that there should be no judicial review of matters such as this, or that we are compelled to accept the Board's legislative actions. Appellants are correct that mandamus does not lie to compel an act when its performance is discretionary. *McDonald v. City of Brentwood,* 66 S.W.3d 46, 51 (Mo.App. E.D.2001). Thus, as an initial matter, we must address whether the matter before us involves a discretionary or ministerial act of the Board.

■ In support of its sole point on appeal, Appellants assert that the trial court's interpretation and application of Section 8.02 of the District's Ordinance 1 is erroneous because the ordinance requires a connection fee for each of Sunswept's 323 units planned for the apartment community. Appellants argue that evidence of actions taken by the Board in connection with the Walden Pond development supports its interpretation of Section 8.02, and deprives the trial court of the evidentiary support necessary to its findings. Appellants argue that the very existence of the Walden Pond Agreement, which appears to grant a credit to the development of the apartment complex for pre-existing mobile homes, supports its argument that a credit or waiver of the sewer connection fee is a discretionary legislative act within the sole purview of the Board. Appellants further argue that, had Walden Pond been entitled to the credit or waiver of a connection fee as a matter of right under the District's ordinances, there would have been no reason for the District to enter into the Walden Pond Agreement. Appellants characterize the Walden Pond Agreement as being a unique agreement entered into by a previous board under its discretionary statutory authority. The Walden Pond Agreement, Appellants argue, is evidence of the trial court's erroneous interpretation of the District's ordinances.

■ Where an ordinance involves a determination of facts, or a combination of law and facts, a discretionary act rather than a ministerial act is involved. *State ex rel. Killingsworth v. George,* 168 S.W.3d 621, 623 (Mo.App. E.D.2005). In their brief, Appellants contend that the District derives its authority "to grant cred-

its/waivers [6] of connection fees" from Section 204.330.4.[7] The District does derive its authority to contract from Section 204.330.4, which, in pertinent part, provides that boards of trustees for sewer districts:

... may contract with public agencies, individuals, private corporations, and political subdivisions ... to permit them to connect with and use the district's facilities according to such terms, conditions, and rates as the board determines are in the interest of the district....

In accordance with this statutory provision, and pursuant to Section 204.322, which grants such boards the authority to pass all necessary rules and regulations for the proper management and conduct of the sewer district, the District, through its Board, duly enacted Section 8 of Ordinance 1 to address connection fees, and thus established the District's terms, conditions, and rates as the Board determined was in the interest of the District.

Section 8.02 of the District's Ordinance 1 provides, in pertinent part, that "Connection fees for the privilege of connecting to the District collection sewers shall be: (a) For all residential living units including single-family residences, duplex units, multiple residential structure units and mobile homes $2,500.00** per unit." Subsection (c) of Section 8.02 states that connection fees for the privilege of connecting to the District's sewers shall be paid as provided in the ordinance.

"A ministerial act is an act that the law directs the official to perform upon a given set of facts, independent of what the officer may think of the propriety or impropriety of doing the act in a particular case." *Killingsworth,* 168 S.W.3d at 623. In contrast, discretionary acts require the exercise of reason in determining how or whether an act should be performed. *Id.*

Given the plain terms of the ordinance, particularly the language contained in Subsection (c), we conclude that Section 8.02 does not require the Board to exercise reason in determining how or whether a connection fee should be charged; thus, mandamus to compel the District to connect the apartment community to the District's sewer facilities upon payment of the fees in accordance with the District's ordinances is an available remedy for Plaintiffs.

Secondary to their legislative act argument, Appellants contend that the Board's actions in denying Sunswept's request to connect its apartment community to the District's sewer system are not in conflict with either Section 8.02 of Ordinance 1 or the 1976 Agreement. We disagree.

As further explained in our analysis concerning the trial court's declaratory judgment, our review and interpretation of Section 8.02 of Ordinance 1 is consistent with the trial court's ruling that Appellants have a duty to connect Sunswept's apartment community to the District's sewer facilities upon payment of the required

---

**6.** Somewhat confusing to the arguments presented on appeal is the use of the terms "waiver," "offset" and "credit" by the parties. The issue semantically has been framed as to whether Sunswept is entitled to a waiver, credit or off set of the connection fee imposed by the District's ordinances. Sunswept shares some of the fault for this characterization. In reality, the issue before us is not whether Sunswept is entitled to a credit or waiver, but whether the District legally may

require a collection fee for a residential dwelling unit that is properly and lawfully connected to the District's sewer system when the type of dwelling unit changes. This characterization is more than a matter of semantics, and is important to our analysis of the matters presented on appeal.

**7.** All statutory references are to RSMo 2004, unless otherwise indicated.

connection fee for new units. We find the trial court's interpretation of Section 8.02 is not only proper in accordance with the plain meaning of the language found within the ordinance, but is supported by evidence of the District's previous application of the ordinance to the Walden Pond development.

Accordingly, we find the trial court's decision to grant the writ of mandamus was appropriate and not an abuse of discretion.

## B. The Trial Court's Declaratory Judgment and Section 8.02 of Ordinance 1

█ We now turn to the trial court's declaration that the District is required to allow Plaintiffs to connect their apartment communities to the District's sewer facilities while requiring a connection fee only for new units resulting from the development of the apartment communities. We must determine whether the District may require a collection fee for a residential dwelling unit that replaces a residential unit previously connected to the District's sewer system. In so doing, we review de novo the trial court's interpretation of Section 8.02, and will affirm its ruling unless there is no substantial evidence to sustain it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Croxdale*, 272 S.W.3d at 404 (interpretation of ordinance); *Maasen*, 133 S.W.3d at 518 (standard of review for declaratory judgment).

In its interpretation and construction of Section 8.02, the trial court found:

> Section 8.02 does not purport to impose a fee for **reconnection,** but only for 'the privilege of **connecting** to the District collection sewers.' ... The rule draws no distinction between the types of residential units—single-family residences, duplex units, multiple residential structure units (i.e. apartments), and mobile

homes are all treated the same.... There is no basis in [S]ection 8.02 for the imposition of a connection fee for apartment units on property where equivalent mobile home units are already connected.

The trial court then determined that the District's demand for connection fees for all apartments in the Sunswept development was "contrary to both the plain terms of [S]ection 8.02 and the District's own construction of that section as applied to the Walden Pond development."

We are not persuaded by Appellants' argument that the trial court's interpretation and analysis of Section 8.02 is erroneous. To the contrary, the trial court's reasoning logically flows from the plain language of the ordinance. It is undisputed that Sunswept previously had paid connection fees for at least 208 residential units. As the trial court noted, Section 8.02 of the District's Ordinance 1 does not distinguish between different types of residential units, but rather establishes that the District's connection fees for all residential living units, including multiple residential structure units and mobile homes, is $2500 per unit. Moreover, the ordinance expressly states that the connection fees shall be paid as provided by its terms. As written, those terms do not require the payment of an additional, or reconnection, fee if the residential living units change in type from mobile homes to apartments.

Not only does the plain language of the ordinance support the trial court's interpretation of Section 8.02, but the evidence relating to the District's treatment of the Walden Pond development in 1999 provides further support of the trial court's findings and interpretation of the District's ordinances. The trial court indicated that "the treatment of the Walden Pond development is key to the construction of Section 8.02, which was enacted, construed

and enforced before Doss and the current Board came to the District." The trial court then reasoned that the "Walden Pond agreement called for Walden Pond to 'pay to the District *in accordance with the Ordinances of the District,* at the time of the execution of this agreement, service connection charges as follows[,]' " and that the connection fees specified in the Walden Pond Agreement "called for a credit/offset/waiver for 131 mobile homes." Accordingly, the Walden Pond Agreement expressly acknowledged credit for fees paid for the mobile homes that had been connected previously to the District's sewer system.

The Walden Pond Agreement thus provided, "in accordance with the Ordinances of the District," that the developer of Walden Pond would pay the District a connection fee for "238 apartments minus 131 equivalent apartments that were connected and have been removed from this property, or 107 equivalent apartments[.]" A letter from the District to Walden Pond stated that the District agreed to "provide a credit of 131 equivalent apartments as a result of the elimination of the mobile homes at the former Three Oaks Mobile Home Park."

As the trial court noted in its Amended Judgment, "[i]n applying the District's rules, there is no basis for distinguishing between the current Sunswept development and the previous Walden Pond development—the only previous customer of the District to replace connected mobile homes on its property with apartments." Given this fact, the interpretation of the District's Ordinance as referenced in the Walden Pond Agreement is relevant to the trial court's finding.

The trial court's interpretation is supported by the plain language of the Ordinance. Moreover, the Walden Pond Agreement, as the only existing example of the District's application of the District's Ordinance relating to connection fees where an existing residential use is replaced with a different residential use, further supports the trial court's findings.

The trial court's judgment is based on substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Maasen,* 133 S.W.3d at 518.

### Conclusion

Finding no error, the judgment of the trial court is affirmed.

KENNETH M. ROMINES, C.J., and GEORGE W. DRAPER III, J., concur.