# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1350

———————

William Carroll O'Neal;      *
Doris O'Neal,      *
     *
        Appellants,      *
     *   Appeal from the United States
     v.      *   District Court for the
     *   Western District of Missouri.
State Farm Fire & Casualty Company,      *
     *
        Appellee.      *

———————

Submitted: November 18, 2010
Filed: January 7, 2011

———————

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Putative class representatives William and Doris O'Neal (the O'Neals) appeal from the district court's[1] order dismissing their breach of contract and unjust enrichment claims. They alleged that State Farm Fire and Casualty Company (State Farm) failed to comply with code requirements that govern how wood shake and shingle roofs damaged by hail or wind are to be repaired. The district court concluded that State Farm had fulfilled its duty under the policy. We affirm.

———————

[1]The Honorable Dean Whipple, United States District Court Judge for the Western District of Missouri.

I.

The O'Neals own a home with a wood roof.  They purchased a homeowners' policy from State Farm, wherein State Farm agrees to repair, or cover the cost of repairing, wood shakes or shingles damaged by wind or hail.  In May 2008, hail and wind damaged their roof.  State Farm inspected the damage and approved a claim for replacement of 80 wood shakes and 35 ridge cap shingles.  This approach, called "spot replacement," would replace the shakes damaged by the storm but leave undisturbed those that were not.  The O'Neals found State Farm's offer of spot replacement inadequate and filed this class-action lawsuit, alleging breach of contract and unjust enrichment.[2]

A wood roof assembly is comprised of either shakes or shingles placed side-by-side to form a horizontal row called a course.  The small gap between a shake or shingle and its neighbors is called a joint.  Courses are staggered horizontally so the joints in one course do not align with the joints of the course above or below it.  Courses also overlap each other, so that a lower portion of each shake or shingle will be visible but the remainder will be hidden by the overlap of the course(s) above.

To affix each shake or shingle to the roof assembly, two nails are driven through it at an angle perpendicular to its face.  Depending on the size and positioning of the shakes or shingles and the amount of overlap, the nails driven through a shake or shingle to affix it to the roof may also penetrate the shakes or shingles of one or more courses below it.  As a result, a single nail may penetrate a shake or shingle and pass through one or more courses that sit below it. Likewise, a single shake or shingle initially affixed to the roof assembly with two nails may be pierced by additional nails from the course(s) above.

---

[2]The O'Neals appeal from the dismissal of their complaint.  The case did not reach the class certification stage, and so we express no opinion regarding that aspect of the lawsuit.

The O'Neals' complaint contends that the building code governing the repairs covered under the insurance policy requires something more than spot replacement. For purposes of this appeal, the parties agree that the International Residential Code (IRC) defines the requirements that any such repairs must satisfy. The relevant provisions in the IRC state: "[w]ood shingles shall be attached to the roof with two fasteners per shingle" and "[w]ood shakes shall be attached to the roof with two fasteners per shake." IRC §§ R905.7.5, R905.8.6.

The O'Neals claim that, when read in its entirety, the IRC requires at least four nails per shingle. They cite provisions in the IRC that specify the gap between individual shingles and the extent to which upper courses should overlap those that come below. As they see it, a builder who follows these provisions and adheres to the IRC in every respect will use four nails per shake or shingle. In further support of this claim, they included in the complaint comments from one of State Farm's engineers, who stated: "[T]hough each individual shake unit is attached to a roof slope using (commonly) 2 fasteners per unit, if positioned correctly, each shingle may actually have four - six fasteners holding it to the deck."

According to the O'Neals, the text of the IRC and the engineer's comments show that repairing a damaged shake or shingle roof in compliance with the IRC requires more than simply swapping out the individual damaged shakes or shingles. The O'Neals claim that to comply with the implied four-nail requirement of the IRC, State Farm would need to cover the following costs: 1) replacement of the entire roof; or 2) replacement of all courses from the top of the roof to the lowest point where damages from hail or wind occurred. In their view, spot replacement is an insufficient remedy under the terms of the policy.

State Farm maintained that the IRC provisions quoted above mean what they say: wood shakes or shingles must be attached with two nails per shake or shingle. It contended that spot replacement fulfills its obligations under both the IRC and the

policy. The district court agreed and dismissed the complaint, noting that the O'Neals failed to cite case law or examples in which their interpretation had been given effect.

II.

We review *de novo* the grant of a motion to dismiss, taking all allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). Dismissal under Rule 12(b)(6) is appropriate "if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations." Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006) (citation omitted). Likewise, we review *de novo* questions of statutory interpretation and examine "the text of the statute as a whole by considering its context, object, and policy." American Growers Ins. Co. v. Fed. Crop Ins. Corp., 532 F.3d 797, 803 (8th Cir. 2008) (citation omitted); Sunswept Properties, LLC v. Ne. Pub. Sewer Dist., 298 S.W.3d 154, 159 (noting that under Missouri law, ordinances are subject to the same rules of construction that govern statutory interpretation).

On appeal, the O'Neals first claim that State Farm and the district court improperly read the provision in isolation from the rest of the IRC. They note that under Missouri law, it is a "fundamental rule of construing a statute that one part of a statute should not be read in isolation from the rest of the statute." Cousin's Adver., Inc. v. Bd. of Zoning Adjustment, 78 S.W.3d 774, 780 (Mo. Ct. App. 2002). If the "two nails per shingle" precept is read alongside other provisions of the IRC, they claim, it becomes clear that each shingle will be secured by at least four nails: two nails that are face-nailed, passing through the exposed, lower portion of the shingle, and two nails that pass through it after passing through a shingle from an upper course that overlaps it. Proper repair, in their view, would consist of either replacing the roof or replacing all courses that sit above the lowest point where damage occurred, with each individual shingle fastened to the roof assembly with a minimum of four nails.

The O'Neals' theory directly contradicts the plain text of the relevant IRC provisions. Their reliance on the comments of State Farm's engineer is misplaced, because he clearly stated that a shake or shingle may be fastened to the roof assembly by as many as four to six nails, not that it must be so fastened. Accordingly, we find unpersuasive the claim that the IRC, when read as a whole, imposes an unstated but implied four-nail requirement, and we agree with the district court that spot replacement complies with the IRC.

The O'Neals also claim the district court improperly imposed an evidentiary burden at the pleading stage when it commented on their failure to cite case law or examples in which their interpretation of the IRC had been given effect. The O'Neals contend that the district court required that they not only plead facts, but produce evidence in support of their theory. This comment does not suggest that the district court expected the O'Neals to provide evidentiary support for their theory; rather, it merely supports the conclusion that the O'Neals' theory is unpersuasive on its own terms and fails as a matter of law. The district court's observation thus goes to the soundness of the O'Neals' legal theory, not to the sufficiency of their factual allegations.

III.

Because we conclude that the district court did not err in its interpretation of the IRC and did not impose an improper evidentiary burden on the O'Neals at the pleading stage, we need not consider State Farm's argument that its responsibilities under the policy are not triggered unless and until an official has enforced the IRC provision at issue, which, it claims, did not occur in this instance.

The judgment is affirmed.

_____